CALDWELL, AS ATTORNEY GENERAL FOR THE STATE OF SOUTH DAKOTA AND *EX OFFICIO* MEMBER OF THE STATE SECURITIES COMMISSION OF THE STATE OF SOUTH DAKOTA, ET AL. *v.* SIOUX FALLS STOCK YARDS COMPANY ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH DAKOTA.

No. 386. Argued October 16, 17, 1916.—Decided January 22, 1917.

The South Dakota "Blue Sky Law," Laws of 1915, c. 275, is the same in principle as the laws of Ohio and Michigan involved in *Hall* v. *Geiger-Jones Co., ante,* 539, and *Merrick* v. *Halsey & Co., post,* 568, and is sustained over constitutional objections, for the reasons assigned in those cases, as applied to a Colorado corporation seeking to raise capital by sales of its own shares, and to individuals dealing in such shares.

When a statute regulating complainant's business is alleged to be un-

constitutional and its effect, if the business be continued in disrè-
gard of it, will be to visit him with repeated criminal prosecutions
involving heavy fines and imprisonment, the remedy at law is not
adequate.

A suit to enjoin state officials from instituting criminal proceedings in
enforcement of such a statute is not a suit against the State.

Reversed. For decree below see 230 Fed. Rep. 236, note.

THE case is stated in the opinion.

*Mr. Clarence C. Caldwell,* Attorney General of the State
of South Dakota, with whom *Mr. Byron S. Payne,* As-
sistant Attorney General of the State of South Dakota,
was on the brief, for appellants.

*Mr. George J. Danforth,* with whom *Mr. Hugh S. Gamble,*
*Mr. Frank McLaughlin* and *Mr. Edward E. Wagner* were
on the brief, for appellees:

The act denies to the appellees due process of law, in
violation of the Fourteenth Amendment and the South
Dakota constitution, § 2, Article 6.

A complete analysis of its provisions shows that this
is not a law to prevent fraud in the sale of stocks and
bonds. It is a law designed for the sole purpose of regu-
lating the control of the sale of stocks and bonds to a point
of absolute prohibition. The stocks and bonds that are
sold under the permit given by the commission are no
more protected against the fraud and deceit of the agent
in selling them than are those that are sold without a
permit. The law is purely an attempt to regulate profit
and loss and to try to guarantee the citizens of South
Dakota against a possible mistake in judgment. It is
simply an effort to prevent the citizens of this State from
entering into a legitimate enterprise for gain, if they so
desire, and to guard their pocketbooks. The law does not
provide any penalty for fraud, but simply contains a
prohibition against and provides a penalty for tendering
for sale an article of commerce, however honestly it may

be tendered. Herein lies the vice of the statute, and herein does it differ from all laws regulating commercial transactions, which have been upheld by the court under the guise of police regulations.

The State Securities Commission is not merely an administrative board vested with certain discretionary powers, but is rather a court before which evidence must be taken, examined and weighed, and with authority greater than was ever conferred upon any judicial tribunal in this country.

The very right to make a contract is taken away from the individual unless the individual or corporation or association receives the stamp of approval of the commission upon the contract.

For a century or more the business of trading in horses has been recognized as a line of business in which fraud was frequently practiced. There would be just as much sense in having the State Securities Commission put its stamp of approval upon every horse trade as there would be to have it set up its judgment against the skilled investor, simply because an occasional person has lost his money by reason of a stock transaction. *Ex parte Hawley*, 22 S. Dak. 23.

The act is an unlawful interference with interstate commerce. *Catlin & Powell* v. *Schuppert*, 110 N. W. Rep. 818; *Hatch* v. *Reardon*, 204 U. S. 152; *International Textbook Co.* v. *Pigg*, 217 U. S. 91.

The statute denies to the appellees the equal protection of the law. It exempts state and national banks and loan associations and certain other classes.

The act attempts to delegate both legislative and judicial power to the State Securities Commission, and is not an inspection law. *Phœnix Insurance Co.* v. *Perkins*, 101 N. W. Rep. 1110; *Sioux Falls* v. *Kirby*, 6 S. Dak. 62; *Hewitt* v. *Board of Medical Examiners*, 84 Pac. Rep. 39; *Mathews* v. *Murphy*, 63 S. W. Rep. 785.

In the case at bar, the law distinctly provides that all that is necessary for the Securities Commission to find is that in its opinion the sale of stocks, bonds, etc., might work fraud upon the purchaser. A pure and absolute discretionary power is given to the commission. First, as to the granting of the permit, and, Second, as to the revocation of the permit after it is granted. There is no standard fixed to guide the commission in granting the permit, nor is there any standard prescribed as the reason for the revocation of the permit.

*Mr. George Cosson*, Attorney General of the State of Iowa, and *Mr. Walter C. Owen*, Attorney General of the State of Wisconsin, by leave of court, filed a brief as *amici curiæ* on behalf of the National Association of Attorneys General of the United States.

MR. JUSTICE McKENNA delivered the opinion of the court.

This case was argued and submitted with Nos. 438, 439 and 440, just decided, *ante*, 539, and with No. 413, *post*, 568, which concerns a statute of Michigan of like kind, the opinion in which is to follow. It involves the same general questions as those cases and is presented to review a decree of the District Court enjoining appellants from enforcing a statute of the State of South Dakota relating to the sale of securities. The act (§ 23) makes violations of its provisions a misdemeanor and criminal prosecutions under the act were the particular actions of the officers of the State that the appellees prayed to be enjoined.

After a consideration of the pleadings and argument the court, consisting of three judges, expressed the view that the statute violated the Constitution of the United States, and cited in confirmation *Alabama & N. O. Transportation Co.* v. *Doyle*, 210 Fed. Rep. 173; *Wm. R. Compton Co.* v.

*Allen,* 216 Fed. Rep. 537, and *Bracey* v. *Darst,* 218 Fed. Rep. 482.

The court decreed that the appellants be enjoined from instituting and prosecuting any actions, civil or criminal, against complainants (appellees) under the statute for alleged violations thereof, and from taking any proceedings for its enforcement except such as might be deemed proper by them in the criminal actions already pending.

The Sioux Falls Stock Yards Company is a Colorado corporation, having its principal place of business at the City of Denver, and the Morleys are residents and citizens of Iowa.

The Stock Yards Company was at the times mentioned in the bill engaged in building and constructing a stock yard in Sioux Falls, South Dakota, and in selling a certain amount of its capital stock for raising sufficient capital for that purpose. The Morleys, at such time, were engaged in the buying and selling of stock and especially in selling the stock of the Stock Yards Company to various farmers and other purchasers, such sales being necessary to complete the construction of the stock yard and also necessary to enable the Morleys to earn a livelihood.

Six informations were filed against appellees at the instigation of appellants for violations of the statute and it is alleged that appellees will be prosecuted immediately under such informations and will be further prosecuted.

The statute, it is alleged, is an infraction of the Fourteenth Amendment of the Constitution of the United States and imposes a burden upon and practically amounts to a prohibition of interstate commerce and hence offends the commerce clause of the Constitution of the United States; and "that it attempts to vest in and delegate to the said so-called State Securities Commission judicial powers unauthorized by law."

Against the bill appellants urge, besides asserting the validity of the statute, three defenses: (1) That com-

plaintants have a plain, speedy and adequate remedy at
law; (2) the suit is one against the State; (3) that the plea
of the unconstitutionality of the statute was made in the
criminal actions.

The three defenses are without merit. Six informations
have already been filed against appellees and as many
more may be brought as there may be violations of the
statute, and a conviction of each may bear a fine of $1000
or imprisonment, or both.

The suit manifestly is not one against the State, and
the decree appealed from does not enjoin criminal actions
commenced before the filing of the bill. We therefore
pass to the merits.

A summary of the statute is all that is necessary. Its
purpose as declared in its title is to prevent fraud in the
sale and disposition of stocks, bonds or other securities
sold or offered for sale within the State. It creates a com-
mission called the State Securities Commission, of which
the appellants—except Hanson, who is prosecuting attor-
ney of Turner County—are members.

Those dealing in securities—and they may be persons,
corporations, co-partnerships, companies or associations,
incorporated or unincorporated—shall be known, it is
provided, "as a domestic investment company." Those
resident of or organized in any other State, Territory or
government shall be known "as a foreign investment
company."

Certain securities are exempt from the provisions of the
act and information as to those to which it applies must
be furnished to the commission as follows: If the securities
are of the dealer's own issue a statement must be filed with
the commission showing in full detail (1) the plan upon
which it proposes to transact business, (2) a copy of all
contracts, stocks and bonds which it proposes to make with
or sell to contributors or customers, together with a copy
of its prospectus and of the proposed advertisements of its

securities; which statement shall also show its name and location and main office; (3) the names and addresses of its officers and an itemized account of its financial condition and the amount of its assets and liabilities; (4) such other information as the commission may require; (5) if a foreign corporation, a copy of the law under which it was incorporated; (6) a copy of its charter and certain other papers relating to its constitution and organization. A filing fee is provided for of not less than $10 nor more than $100. The described papers are to be verified and, if of record, certified to. If a foreign corporation, the applicant must file its irrevocable consent to suits against it by service of summons upon the public examiner.

The commission is authorized to require further information than that mentioned above and to make an appraisal of the property of the applicant at the expense of the applicant.

If the commission find from the statements filed and the reports of the investigations conducted by it that the securities or investment contracts offered for sale would in its opinion work a fraud upon the purchaser, the commission shall disapprove of their sale and notify the company by registered mail of its findings and disapproval, and it shall be unlawful for the company to sell such securities and they shall not be sold in the State. If, however, the proposed plan of business and the securities are not of that character their sale shall be approved and a certificate issued of permission to sell.

The person who is authorized to sell the securities designated in the act is termed a "dealer" in them, and he shall not sell or offer them for sale until he shall have filed a list of the same in the office of the commission. The term "dealer," it is provided, shall not include an owner nor issuer of securities when the sale of them is not made in the course of continued and successive transactions of a similar nature, nor one who in a trust capacity created

by law lawfully sells securities "impressed with such trust." A "dealer" is required to furnish practically the same information as that required of corporations. All authorized agents of a "dealer" or investment company shall be registered with the commission and if the "dealer" be a nonresident or a corporation other than a domestic corporation he shall at the time he registers with the commission file with it a written, duly authenticated appointment of the public examiner of the State as his or its agent in the State upon whom process or pleadings may be served for or on behalf of the "dealer," which appointment shall be irrevocable. Upon compliance with the terms of the act the commission shall issue to such "dealer" a license which shall be good until revoked by the commission for good cause upon notice to the "dealer" and after a hearing duly had.

There is a provision for keeping accounts, payment of fines and other details, and it is provided that if, after permission has been issued authorizing the sale of the designated securities it shall be made to appear to the commission from an examination of an investment company that the further sale of the securities would work a fraud upon the purchaser, the commission may make an order revoking the license of the company and, pending the hearing, suspend the right of the company.

It is unlawful for a dealer or investment company to sell or offer for sale securities other than those approved by the commission or to transact business on any other plan than that set forth in the statements and papers required to be filed with the commission; or to circulate advertisements or other documents in the State differing in any way from the copy filed with the commission; or until the same has been approved by the commission. And no dealer shall sell or offer for sale securities of an investment company until such company has complied with the act. He may, however, if such investment company has not

itself complied with the act, make application for a license.

Records of the commission shall be public records and they shall be so arranged and preserved as to facilitate their examination, except that the commission may in its discretion withhold information relating to the private affairs of persons or corporations when in its judgment the same shall not be required for the public welfare, or any information relative to any matter that may be at issue in any court, unless upon an order of the court. Except as so provided the commission may furnish to those who may apply therefor any information regarding any investment company or its affairs.

Annual statements are required to be filed by investment companies, domestic or foreign, in such form and containing such information as the commission may demand; and failure to do so forfeits its permit.

The Supreme Court of the State upon petition of any person aggrieved may review by certiorari any final order or determination of the commission. The issue of the writ shall not, however, unless specifically ordered by the court, operate as a stay of proceedings.

Violations of the act are made misdemeanors punishable by a fine of not more than $1000 or imprisonment for not more than one year, or both fine and imprisonment. And it is provided that if any section of the act be declared unconstitutional or unauthorized the other sections shall not be vacated thereby.

The statute of South Dakota differs in some details from the statute of Ohio, but in its purpose and general provisions it is the same. There is urged against it, as was urged against the Ohio statute, that it violates the Fourteenth Amendment and the commerce clause of the Constitution of the United States. The argument to support these contentions, while affluent in citation of cases, is not so circumstantial as that which is presented against

the Michigan statute. Therefore, we shall rest this case upon our opinion in Nos. 438, 439 and 440, reserving to the Michigan case our reply to the more specific objections.

*Decree reversed and cause remanded for further proceedings in conformity with this opinion.*

MR. JUSTICE McREYNOLDS dissents.