## DOHERTY v. McAULIFFE et al.
### No. 3914.

District Court, D. Massachusetts.
May 8, 1934.

50

Putnam, Bell, Dutch & Santry, Stoughton Bell, and Arthur F. Ray, all of Boston, Mass., for plaintiff.

Benjamin H. Chertok, of Boston, Mass., for certain stockholders.

Simon Cohen, of Boston, Mass., for defendant Minnie Rosenfield.

William H. Lewis, of Boston, Mass., for defendant Peter C. Borre.

Alfred Gardner and Gardner, Worcester & Gifford, all of Boston, Mass., for defendant Thomas McAuliffe.

Samuel H. Lewis, of Boston, Mass., for defendant Wm. S. Dana.

Simon Cohen, of Boston, Mass., for defendant Minnie Rosenfield.

G. L. Dillaway, of Boston, Mass., for Charles E. Absolom.

Samuel G. Thorner, of Boston, Mass., pro se.

BREWSTER, District Judge.

This bill of complaint was brought to prevent a multiplicity of suits threatened by holders of stock of the Cities Service Company sold in this state by the complainant, as broker, and to determine the validity of such sales made upon installment plan contracts.

A motion to dismiss was heard and denied by Judge Lowell. The case is now presented on the merits. The essential facts are not in dispute, but in order to fully understand the legal and equitable aspects of the case, a somewhat extended statement seems desirable. It will also be well to preface the statement with a summary of the pertinent provisions of the Massachusetts statute out of which the controversy proceeds.

### Statement of Facts.

1. In 1921 the Massachusetts Legislature enacted a statute entitled "Sale of Securities

Act." St. 1921, c. 499. This statute was from time to time amended. The amendment of 1924 (St. 1924, c. 487) contains the provisions with which we are concerned. The act prohibits the sale of securities not exempted by the act unless and until the person offering the same for sale has complied with the statute. The Commission of Public Utilities is charged with the duty of enforcing the act, and the Commission is authorized to forbid sales until the required information is filed with it, and whenever it is of opinion, from the information disclosed or in its possession that the sale of the security is fraudulent or would result in fraud, it shall make a finding to that effect, after which such security cannot be sold, or offered for sale, until further action by the Commission or by the court. Sections 5 and 6, as amended by St. 1924, c. 487, §§ 2, 3.

Any person aggrieved by any order or finding of the Commission, or by any refusal or failure to make an order under the act, shall be entitled to a public hearing before a majority of the members thereof, at which he may be represented by counsel and may submit any relevant evidence. The Supreme Judicial Court and the superior court are given jurisdiction in equity "to review, modify, amend or annul any ruling, finding of fact, or order of the commission." Section 7, as amended by St. Mass. 1922, c. 435, § 2.

The statute requires that all persons selling securities, with an immaterial exception, shall register with the Commission and comply with the requirements of the law respecting the furnishing of information. The Commission is authorized to suspend or revoke the registration of a broker or salesman if it appears to the commission that the registrant has been conducting business as a broker or salesman in a fraudulent manner or has been willfully or purposely evading or seeking to nullify the provisions of this chapter. Section 8, as amended by St. 1924, c. 487, § 4. The act imposes penalties for violations. Section 15, as amended by St. 1924, c. 487, § 7.

2. By the amendment in 1924 there was incorporated into and made a part of section 8, which deals with the application and registration of brokers and salesmen, the following clause:

"No person registered as a broker or salesman shall sell any security or securities, whether exempted under section three or not, which are to be paid for in accordance with the terms of an instalment or partial payment plan contract except as such plan is approved by the commission."

3. I find that the requisite diversity of citizenship and the jurisdictional amount have been established in this case.

4. The complainant, Henry L. Doherty, during the years 1927, 1928, 1929, and for some time prior thereto and thereafter, carried on under the name of Henry L. Doherty & Co. as part of his business the sale of stocks and other securities of Cities Service Company and certain of its subsidiaries and maintained his principal place of business in the city and state of New York, and also carried on said business at branch offices in various states of the United States and in the city of Boston, commonwealth of Massachusetts.

5. In compliance with the provisions of the Sale of Securities Act of Massachusetts, the complainant Henry L. Doherty, was at all times during the years 1927, 1928, and 1929 duly registered as a broker in the commonwealth of Massachusetts.

6. During the years 1927, 1928, and 1929, until in or about the month of September, 1929, the complainant under his trade-name of Henry L. Doherty & Co., made sales of stocks of the Cities Service Company under and pursuant to the terms of certain installment or partial payment plan contracts which were substantially in the form of one or the other of the specimen contracts annexed to the bill of complaint and marked Exhibits A, B, and C.

7. The securities sold by the complainant by means of said installment plan contracts are, and were during the years 1927, 1928, and 1929, securities which under the provisions of section 3 of the Sale of Securities Act of Massachusetts were and are exempted and could and can be legally sold in Massachusetts.

8. Complainant omitted to secure the approval of the Public Utilities Commission of Massachusetts for any of the plans embodied in said installment plan contracts.

9. Complainant sold securities of the Cities Service Company under such installment plan contracts to a large number of persons resident in Massachusetts, including the respondents other than the respondents Dana, Borre, and Thorner. The total sales by complainant under said installment plan contracts to persons resident in Massachusetts exceeded $200,000 in amount and the number of purchasers under such plans who were resident in Massachusetts exceeded two hundred.

10. Over one hundred of such purchasers under such installment plan contracts, including the respondents other than the respondents Dana, Borre and Thorner, have notified

the complainant that they severally have elected to rescind their respective contracts and have severally demanded that complainant repay and return to them respectively all sums of money severally paid by them under such contracts and such purchasers, including the respondents named other than the respondents Dana, Borre, and Thorner, have claimed and asserted that the Supreme Judicial Court of Massachusetts in construing said Sale of Securities Act has held that any sale of securities made in contravention of said act or made without compliance with the provisions thereof is void at the instance of the purchaser, and that the purchaser is entitled to recover the price paid upon rescission of the transaction, and further contend and assert that the several installment plan contracts made by complainant with each of them severally were made and entered into by complainant without procuring the approval thereof by the Public Utilities Commission of Massachusetts, and that therefore each of said contracts is void at the instance of the purchasers, who are severally entitled to recover the price paid by them, and such purchasers have threatened to institute and prosecute suits to compel the complainant to refund the sums respectively paid by them under such contracts.

11. Complainant is threatened with more than one hundred separate suits or actions based upon the identical claim that said contracts are void and that the respective purchasers thereunder are entitled to a refund of the purchase price paid by them.

12. The respondent William S. Dana was for some time prior to August 1, 1931, employed by the complainant as a salesman and as such solicited and procured many of the aforesaid installment plan contracts. After the said Dana left the employ of the complainant and during the year 1933, he approached sundry purchasers in the commonwealth of Massachusetts and advised and solicited such purchasers to rescind their respective contracts upon the grounds that such contracts had not been approved by the Public Utilities Commission and were void at the instance of the purchasers and advised and urged such purchasers to make claim and demand upon the complainant for a refund of the sums paid by them respectively. Prior to and at the time of commencement of this suit, the said respondent Dana was connected as employee or otherwise with a firm doing business in Boston in the commonwealth of Massachusetts under the name of F. S. Bryant & Co. Printed postal cards bearing the printed signature of F. S. Bryant & Co., in the form of Exhibit D annexed to the bill of complaint were caused by the said Dana to be sent to a large number of such purchasers under said installment plan contracts. Said Dana has instigated a large number of such purchasers to make claim against the complainant.

13. The respondent Samuel G. Thorner is an attorney at law engaged in the practice of law in Boston, Mass. On or about August 9, 1933, the respondents Thorner and one Tilly D. Gersin filed with the clerk of the city of Boston a business certificate stating that they were engaged in business under the name of Lloyd's Bonded Adjustment Bureau with a place of business at room 406, 11 Pemberton Square, Boston, Mass. Printed postal cards in the form of Exhibit E annexed to the bill of complaint and bearing the printed name of Lloyd's Bonded Adjustment Bureau were sent to a large number of such purchasers under such installment plan contracts, and the respondent Thorner has represented various of such purchasers in presenting claims against the complainant.

14. The respondent Peter C. Borre is an attorney at law engaged in the practice of law in Boston, Mass. Said respondent Borre has presented a large number of claims against complainant on behalf of such instalment plan purchasers residing in Massachusetts. Some of the claims presented by the respondent Borre on behalf of such claimants were solicited from such claimants by one Frank P. DeScenza, and some of the claims presented by said respondent Borre were solicited from such purchasers by one Merrill N. Thompson, formerly a salesman in the employ of the complainant, and some were solicited by Borre himself.

15. In September, 1929, the complainant requested the Public Utilities Commission to approve the plan embodied in the forms of contract used by the complainant for installment sales of securities in Massachusetts. The Commission refused approval of the plans and contract on two grounds. They objected to the provision of the contract which provided that in case payments were anticipated the stock would not be delivered until a specified number of months after the date of the contract. They also objected to the provisions in the contract providing for the deduction as liquidated damages, of a sum equal to 10 per cent. of the market price in case of default on the part of the purchaser.

16. It was conceded that in all cases where claims against the complainant had been presented, the claimant had paid the full pur-

chase price for the stock and the shares purchased had been transferred to him.

### Conclusions of Law.

It has already appeared that the complainant, as broker, sold stock in Massachusetts on forms of installment contracts which had not been approved in accordance with the provisions of the statutes of Massachusetts then in force. The provision requiring such approval was introduced into the Sale of Securities Act by an amendment enacted in 1924. It prohibited a broker from selling any security, whether exempt or not, on an installment or partial payment plan contract, except as such plan was approved by the Commission of Public Utilities.

In order to determine what relief can be afforded in these proceedings, it is necessary to reach a conclusion respecting the rights of the purchasers of the Cities Service Company stock on the partial payment plan to rescind the contracts which had been consummated by delivery of the stock after full payment of the agreed price therefor.

For the purpose of this case, it may be assumed that the respondents and others of the same class are ready and willing to transfer to the complainant, or whomever he may name, the shares purchased.

The issues raised are whether the statute requiring the approval of the Commission is a constitutional enactment and whether sales made in violation of the statute may be rescinded as void contracts.

The constitutionality of the statute is challenged on several grounds. It is argued: (a) That it is an arbitrary and unreasonable restriction upon the right of the individual to enter into contracts otherwise lawful; (b) that it denies to the complainant the due process guaranteed to him by the state and Federal Constitutions; and (c) that it delegates legislative powers to an administrative board.

■ We may concede that the liberty to contract without unreasonable restraint is protected by the Federal Constitution. Wolff Packing Co. v. Industrial Court, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280; Yu Cong Eng v. Trinidad, 271 U. S. 500, 46 S. Ct. 619, 70 L. Ed. 1059; New State Ice Co. v. Liebmann, 285 U. S. 262, 52 S. Ct. 371, 76 L. Ed. 747.

■ While the right of seller and purchaser to contract "is a part of the liberty protected by the due process clause, it is subject to such restraints as the state in the exertion of its police power reasonably may put upon it." Mr. Justice Butler in Advance-Rumely Thresher Co. v. Jackson, 287 U. S. 283, 288, 53 S. Ct. 133, 134, 77 L. Ed. 306, 87 A. L. R. 285.

■ It is now too late to doubt that sales of securities are transactions which fall within the domain of those commercial activities upon which a state may exert its power to regulate in the public interest. Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 220, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; Caldwell v. Sioux Falls Stock Yards Co., 242 U. S. 559, 37 S. Ct. 224, 61 L. Ed. 493; Merrick v. N. W. Halsey & Co., et al., 242 U. S. 568, 37 S. Ct. 227, 61 L. Ed. 498.

These cases last cited upheld the so-called "Blue Sky Law" of Ohio, South Dakota, and Michigan, respectively. It does not appear that any of these statutes contained the clause which is now under consideration, but they are instructive as showing that the state may properly declare a definite policy respecting the prevention of fraud in the sale of securities to the public and may enact regulatory legislation to that end.

In the course of the opinion in Hall v. Geiger-Jones Co., supra, the court said: "It will be observed, therefore, that the law is a regulation of business, constrains conduct only to that end, the purpose being to protect the public against the imposition of unsubstantial schemes and the securities based upon them. Whatever prohibition there is, is a means to the same purpose, made necessary, it may be supposed, by the persistence of evil and its insidious forms and the experience of the inadequacy of penalties or other repressive measures."

The Blue Sky Laws involved in the cases last cited and the reasoning of the court leave little ground upon which the complainant may stand in his attacks upon the constitutionality of the particular clause of section 8 involved in this controversy. In Ohio, the Legislature conferred upon an administrative officer authority to reject or revoke applications for license if he ascertained that the licensee was of bad repute; had violated the provisions of the act; or had engaged or was about to engage in illegitimate business or fraudulent transactions. Hall v. Geiger-Jones Co., supra.

The South Dakota statute, considered in Caldwell v. Sioux Falls Stock Yards Co., supra, required a dealer proposing to sell his own securities to file with the Commission a statement showing among other things, in full detail, the plan upon which he proposed to

transact business, and in that statute the Commissioner possessed the authority to forbid the selling of any securities and to disapprove of any proposed plan of business if he found, from the statement filed and his investigations that the securities or contracts offered for sale would, in his opinion, work a fraud upon the purchaser. Obviously the effect of the provisions of the statute was to render unlawful the sale of securities upon a plan of business which had not been approved by the Commission. The Michigan statute was said to be almost identical with the South Dakota statute. Merrick v. N. W. Halsey & Co., supra.

Notwithstanding these provisions, none of these Blue Sky Laws was held to be arbitrary or unreasonable; to deny due process of law or to unlawfully delegate legislative powers to administrative officers. In the light of these decisions, it can hardly be said that the objectionable clause of section 8 is violative of any constitutional guarantee.

It is a recognized rule of statutory construction that any phrase will be construed in the light of the Act as a whole and its avowed purpose. United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563.

And of two reasonable constructions, that one will be adopted which upholds the constitutionality of the act. Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 34 S. Ct. 359, 58 L. Ed. 713; Buttfield v. Stranahan, 192 U. S. 470, 24 S. Ct. 349, 355, 48 L. Ed. 525; Nicol v. Ames, 173 U. S. 509, 19 S. Ct. 522, 43 L. Ed. 786; United States v. Gettysburg Electric Ry. Co., 160 U. S. 668, 16 S. Ct. 427, 40 L. Ed. 576.

The object of the 1924 amendment must be the same as the earlier provisions which prohibit sales of any security upon which the act operates. And that object was to prevent sales that would be "fraudulent or would result in fraud."

The words "fraud" and "fraudulent" are defined in the act. Section 2 (g), as amended by St. 1924, c. 487, § 1. The definition is sufficiently broad to embrace any scheme to obtain exorbitant profits, fees, or commission. A reasonable construction of the clause of section 8 would limit the authority of the Commission to withhold approval only as to such contracts as it deemed likely to result in a fraud within the meaning of the statute. So construed, the clause is neither arbitrary nor unreasonable. See Yoshizawa v. Hewitt (C. C. A.) 52 F.(2d) 411, 79 A. L. R. 317.

There is no presumption that a power granted to an administrative board will be arbitrarily, or improperly, exercised. People of State of New York ex rel. Lieberman v. Van De Carr, 199 U. S. 552, 26 S. Ct. 144, 50 L. Ed. 305.

Moreover, the provisions for a review by the courts fully protects against any arbitrary and unreasonable exercise of the authority conferred upon the Commission. Hall v. Geiger-Jones Co., supra; Caldwell v. Sioux Falls Stock Yards Co., supra.

It is argued that the action of the Commission in refusing to later approve the contracts involved in these proceedings furnishes an instance of arbitrary and unreasonable attitude. It is true that installment contracts more favorable to the vendor than were complainant's have been upheld as lawful in the Massachusetts courts. See Bedard v. C. S. Ransom, Inc., 241 Mass. 74, 134 N. E. 392, 25 A. L. R. 1488.

I cannot say however, as a matter of law, that there was any abuse of discretion. Conceivably, installment contracts otherwise lawful may, when used in selling securities, come within the condemnation of the statute and defeat its purpose. A liberal amount of discretion must necessarily be lodged with those charged with the duty of administering the law. However, if the Commission acted arbitrarily, the complainant could have had recourse to the courts.

But it is said that due process of law is denied because the statute is too uncertain and indefinite. I am aware of the principle that a statute which requires the doing of an act so indefinitely described that men must guess at its meaning violates due process of law. Yu Gong Eng v. Trinidad, supra.

But I do not think this case comes within that rule. The broker or salesman will have no difficulty in understanding the requirements of the law. He will know that he is without authority to sell on the installment plan until his plan is approved. In a sense, of course, one who applies for approval may have no definite or fixed standard to guide him, but there will be no room for uncertainty respecting his compliance with the statute.

Again, it is said that the statute violates the Constitution, in that it delegates legislative power to administrative officers. At the outset it must be observed that the police power of the state is not to be measured by criterions applicable to cities and towns. For that reason, Massachusetts cases cited by the complainant do not control. More apposite are those cases dealing with the power of Congress or state Legislatures to grant to

administrative officials authority to carry into effect the legislative policy announced, and to that end to adopt standards necessary to effectuate the purposes of the enactment. Examples of delegation of power which have been deemed lawful may be gathered from Buttfield v. Stranahan, supra; United States v. Grimaud, supra; United States v. Shreveport Grain & Elevator Co., 287 U. S. 77, 53 S. Ct. 42, 77 L. Ed. 175; J. W. Hampton, Jr., & Co. v. United States, 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624; P. F. Petersen Baking Co. v. Bryan, 290 U. S. 570, 54 S. Ct. 277, 78 L. Ed. 505, 90 A. L. R. 1285; Trustees of Village of Saratoga Springs v. Saratoga Gas, Elec. Lt. & Power Co., 191 N. Y. 123, 83 N. E. 693, 18 L. R. A. (N. S.) 713, 14 Ann. Cas. 606.

In Buttfield v. Stranahan, supra, the court dealt with an act which required the secretary of the treasury to establish standards to govern in the importation of teas and to forbid importation which did not come up to the fixed standard. The court was of the opinion that this act did not "in any real sense, invest administrative officials with the power of legislation. Congress legislated on the subject as far as was reasonably practicable, and from the necessities of the case was compelled to leave to executive officials the duty of bringing about the result pointed out by the statute."

The Supreme Court, in Field v. Clark, 143 U. S. 649, 693, 12 S. Ct. 495, 505, 36 L. Ed. 294, quoted with approval the following from the Ohio Supreme Court: "The true distinction * * * is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

I rule therefore, that the statute should be sustained as a valid enactment.

The next question is whether a consummated sale, made on a partial payment plan contract, in contravention of the law, can be rescinded by the purchaser and the purchase price recovered.

In 1932 the Supreme Judicial Court of Massachusetts had for consideration, in Kneeland v. Emerton, 280 Mass. 371, 183 N. E. 155, 159, 87 A. L. R. 1, a case involving a purchaser's right to rescind and recover from a broker who had sold securities without complying with any of the provisions of the Sale of Securities Act. In an exhaustive opinion the court held that the statute did not offend either the federal or the state Constitution. The sale was declared void, and the purchaser held entitled to rescind and recover the price paid for his securities.

Since, in the Kneeland Case, the sale was not made under any plan for future payments, the clause of section 8, with which we are now concerned, was not given consideration. The inhibitions of the statute upon which Kneeland v. Emerton, supra, turned were those of section 5 forbidding any sale whatever to be made. The prohibition of section 8 is aimed at the person making the sale. Is there here a distinction which will lead to results different from those reached by the Massachusetts courts? The complainant so contends. It is my opinion, however, that the reasoning of the learned Chief Justice will not admit of any conclusion other than that any sale condemned by the statute is void and may be rescinded.

Notwithstanding the fact that the Legislature had rejected proposed amendments expressly rendering void sales of securities made in violation of the act, the court was of opinion "that the plain words of the statute render such contracts void under established canons of statutory interpretation without express words to that effect."

This court should adopt the decision as the law, so far as it interprets the act and declares the legal effect of its provisions. Elmendorf v. Taylor, 10 Wheat. 152, 6 L. Ed. 289; Welch v. Swasey, 214 U. S. 91, 104, 29 S. Ct. 567, 53 L. Ed. 923; Plymouth Coal Co. v. Pennsylvania, supra; Supreme Lodge, Knights of Pythias v. Meyer, 265 U. S. 30, 32, 44 S. Ct. 432, 68 L. Ed. 885; Bucher v. Cheshire Railroad Co., 125 U. S. 555, 8 S. Ct. 974, 31 L. Ed. 795.

Upon the right of the purchaser to rescind the sale and to recover the purchase price, the court made this observation:

"The conclusion seems irresistible that the purpose of the Legislature, as disclosed by the statutory words, and its chief design were that contracts made in violation of the statute should be void. In no other way can the individuals for whose protection the statute was enacted secure genuine relief from the evils liable to be inflicted upon them by unrestrained and unregulated sales of fraudulent securities. The statute here in question falls within the large class whereby it has been enacted that contracts are prohibited chiefly for the benefit of the person paying money or other consideration and the receiver is the principal offender. In such instances the latter may be compelled to refund. In

56

construing statutes of that nature, it is established doctrine that a contract prohibited by the statute under penalty made for the benefit of the person parting with his valuable property will be void at his instance in like manner as if in terms declared to be a nullity. The plaintiff as purchaser in ignorance of the fact that as to the shares of stock sold him by the defendant there had been failure to comply with the statute was not in pari delicto with the defendant. The prohibitions of the statute did not apply to him at all but only to the seller. The aim of the statute was to protect the class to which the plaintiff belongs against that to which the defendant belongs. Therefore, the sale being void, the plaintiff is entitled to recover the price paid upon rescission of the transaction. The plaintiff is only seeking 'to recover his own money and to prevent the defendant from unjustly retaining the benefit of his own illegal act,' an act which had its inception and fruition in violation of a highly penal statute."

It is my opinion that the above excerpt is applicable to any contract made in violation of the statute, whether such contract was for the sale outright of the security or a sale upon some future payment plan. In either case the sale is made in violation of the statute. It would seem to me to be absurd to say that a contract made in violation of the statute was void if it contemplated the payment of the purchase price in one payment and was valid if it contemplated payment in installments. The only ground for distinction is that different provisions of the act are violated, a distinction which affords no basis for holding one prohibited act void and the other valid and binding. The sale being void, it inevitably follows from the decision in the Kneeland Case that the purchaser may rescind even after he has completed the contract and acquired the stock.

I rule further that the installment sales made by complainant are void and may be rescinded, thus entitling the respondents named, and others of the same class, to recover from the complainant the amount paid for stock purchased upon the installment plans which have not been approved by the Commission.

It does not follow, however, that the bill should be dismissed or the injunction dissolved. I am assuming that the importance of the controversy will lead to an appeal, pending which the respondents should be restrained from prosecuting a multiplicity of suits. If it should eventually result that my

conclusions are sustained by the court of last resort, then, I take it, some equitable plan will be devised whereby the claims of the various stockholders, entitled to rescind, may be established and satisfied without the necessity of bringing a large number of separate suits.