( **Perrin SHAPPLEY, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 48603.**

Court of Criminal Appeals of Texas.

Oct. 9, 1974.

Appellant's Motion for Rehearing Denied Nov. 6, 1974.

State's Motion for Rehearing Denied April 2, 1975.

Tom B. Bartlett, Jr., Marlin, for appellant.

Elmo F. Parsons, County Atty., Wm. H. Davis, State Securities Board, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

The appellant was convicted for selling securities without have been registered as a dealer or salesman in Texas. Punishment was assessed by the jury at $5,000 fine and five (5) years' confinement (probated).

Briefly, the facts are that on February 8, 1972, appellant made a telephone call from Scottsdale, Arizona, to Dr. Charles Cornwell in Marlin, Texas, offering to sell and soliciting subscriptions for certain securities; i. e., City of East St. Louis Bridge Bonds. The evidence indicates appellant was not actually in Texas until sometime after the sale was confirmed through a brokerage house in Scottsdale. Appellant was subsequently indicted in Falls County. During the course of the trial, several collateral offenses involving similar transactions with a Dr. Pieratt in Moore County were proven by the State.

Appellant has proffered several grounds of error dealing with the law which governs where the sale took place. It is his contention that the sale occurred in Arizona and therefore he is not subject to prosecution in Texas. He relies upon Tex.Bus. & Comm.Code Ann., V.T.C.A., Sec. 8.-301(a) (1968) which provides that upon *delivery* of a security the sale is consummated. Sec. 8.313(a)(3) defines *delivery* as occurring when a broker sends a purchaser confirmation of the sale or otherwise identifies a specific security in the broker's possession as belonging to the purchaser. Since the appellant telephoned from Arizona and the confirmation of the sale was issued from an Arizona broker, it is his position that the sale occurred in Arizona. We disagree. The Business and Commerce Code as adopted in 1966 in Sec. 10–104(3) specifically provides that the Securities Act, Art. 581–1 et seq. Vernon's Ann.Civ.St., was not repealed or diminished by its enactment. Furthermore, it declares that any inconsistency between the

Act and Code will be controlled by the Securities Act. In the Securities Act, the activity meant to be proscribed is specifically defined. Art. 581–29(A) makes it a felony for any person to sell, offer for sale or delivery, solicit subscriptions or orders for, dispose of, invite offers for, or deal in any manner in any security without being a registered dealer or salesman. The term "sale" or "offer for sale" is defined in Art. 581–4(E) to include a subscription, a solicitation of sale, a solicitation of an offer to buy, an offer to sell, or an attempt to sell. The legislative intent clearly was to impose criminal sanctions for almost any dealing in securities without a license.

 This is a case of first impression in Texas. However, other jurisdictions have directly addressed themselves to this issue. It was squarely dealt with in People v. Augustine, 232 Mich. 29, 204 N.W. 747 (1925) where the Supreme Court of Michigan interpreted a similar statute. They held the unlawful act was the "offering for sale." If the offer was made within the state, it would be immaterial whether it was intended that the sale would be finally consummated in another state. That court said:

> "Liability for a violation of the provision may not be evaded by arranging that the subscription secured as a result of the negotiation is to be sent . . . to a place without the state and the sale consummated by the mailing of the stock to him."

We find this case persuasive. The telephone negotiations between appellant and Dr. Cornwell at the very minimum amounted to an "offer" to a person within the state. The fact the sale was to be finalized in Arizona is immaterial. Criminal liability attached when appellant commenced dealing in securities within the state, regardless of where the commercial technicality of "delivery" was effectuated. Therefore, appellant is subject to the security laws of Texas. It follows that it would likewise be immaterial whether or not Arizona required dealers in securities

to be licensed since the security laws of Texas govern this transaction.

Next, appellant claims the court erred in overruling his motion to quash the indictment because it did not sufficiently describe the bonds. The indictment alleged that appellant sold " . . . a certain security, to wit: City of East St. Louis Bridge Revenue Refunding and Improvement Bonds, 3.75% Due January 1, 1985." It is appellant's contention that the exact number of bonds alleged to have been sold should be specified. He relies solely on Moore v. State, 473 S.W.2d 523 (Tex.Cr. App.1971) where it was held that failure to include the number or kind of tires stolen in an indictment for felony theft was fatally defective. It is noted that in the instant case the kind of bonds was alleged. In Byrd v. State, 456 S.W.2d 931 (Tex.Cr. App.1970) the distinction is made regarding the offense of robbery. There, the exact amount of money taken was not contained in the indictment. This Court held it immaterial for the offense was committed whether " . . . a penny, a nickel, or $200 or more . . . " was taken. The logical distinction between theft from the person and various other kinds of theft was explained in Cousins v. State, 154 Tex.Cr. 5, 224 S.W.2d 260 (Tex.Cr.App. 1949). Although related offenses, the distinguishing features are that in theft from the person the property must be taken from the person and the value of the property taken does not enter into the offense. Since the exact amount of money taken is not an element of the crime, the State is not required to plead it in the indictment.

These situations are analogous to the instant case. Here, there is no jurisdictional requirement which must be pled as in felony theft cases. It is immaterial whether one bond or a hundred bonds are dealt in or sold. As long as the bond(s) are unregistered, strict liability is imposed regardless of how many securities are involved. We conclude it was not error to omit the precise number of bonds in the indictment; however, we note that as a matter of practice it would be preferable to do so.

It is further contended that the bonds should have been set out in haec verba in the indictment. It has long been held that in cases involving the illegal sale of unregistered securities it is not necessary that the stock certificate be put in haec verba in the indictment. Aiken v. State, 137 Tex.Cr. 211, 128 S.W.2d 1190 (Tex.Cr. App.1938); Sharp v. State, 392 S.W.2d 127 (Tex.Cr.App.1965). Compare Terry v. State, 471 S.W.2d 848 (Tex.Cr.App.1971). Admittedly, it is better pleading to incorporate in the indictment the stock certificate itself, but it is not essential. Sharp v. State, supra.

While haec verba pleading is not necessary, an indictment must still meet the requirements of Arts. 21.04 and 21.11, Vernon's Ann.C.C.P. Art. 21.04 provides that, "The certainty required in an indictment is such as will enable the accused to plead the judgment . . . in bar of any prosecution for the same offense." This indictment adequately identified the transaction to protect appellant's right against double jeopardy.[1] Art. 21.11 requires that the in-

---

1. "IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURY, for the County of Falls , State of Texas, duly selected, empaneled, sworn charged, and organized as such at the MAY Term A.D. 1973 of the 82nd Judicial District Court for said County, upon their oaths present in and to said court at said term that

PERRIN SHAPPLEY, JR.

hereinafter styled Defendant, on or about the 8th day of February A.D.

1972 , and before the presentment of this indictment, in the County and State aforesaid, did then and there unlawfully engage in the business of a salesman in securities and was then and there a salesman in securities by selling, offering for sale, soliciting subscriptions to and orders for securities and did then and there sell and offer for sale to Charles H. Cornwell and did then and there solicit of and from Charles H. Cornwell a subscription to and order for a certain security, to wit: City of East St. Louis Bridge Revenue Refunding and Improvement Bonds, 3.75% due

dictment shall charge the commission of an offense in ordinary and concise language so that a person of common understanding will know what is meant. The degree of

January 1, 1985, without the said Perrin Shappley, Jr. having first been duly registered as a saleman in securities by the Securities commissioner of the State of Texas as is provided by law in such cases, and he, the said Perrin Shappley, Jr. was then and there not a duly registered salesman in securities duly registered as such by and with the Securities commissioner of the State of Texas.

*2nd Count*

And the Grand Jurors aforesaid, upon their oaths aforesaid in said County and State, at said Term, do further present to said Court that PERRIN SHAPPLEY, Jr. on or about the 8th day of February A.D. 1972 and before the presentment of this indictment, in the County and State aforesaid, did then and there unlawfully engage in the business of a dealer in securities, and was then and there a dealer in securities by selling, offering for sale, soliciting subscriptions to and orders for securities and did then and there sell and offer for sale to Charles H. Cornwell and did then and there solicit of and from Charles H. Cornwell a subscription to and order for a certain security, to wit: City of East St. Louis Bridge Revenue Refunding and Improvement Bonds, 3.75% Due January 1, 1985, without the said Perrin Shappley Jr., having first been duly registered as a dealer in securities by the Securities Commissioner of the State of Texas as is provided by law in such cases, and he, the said Perrin Shappley, Jr. was then and there not a duly registered dealer in securities, duly registered as such by and with the Securities Commissioner of the State of Texas.

*3rd Count*

And the Grand Jurors aforesaid, upon their oaths aforesaid in said County and State, at said Term, do further present to said Court that PERRIN SHAPPLEY, JR. on or about the 8th day of February, A.D. 1972, and anterior to the presentment of this indictment, in the County and State aforesaid, did unlawfully and fraudulently, sell and offer for sale to Charles H. Cornwell a security, to wit: City of East St. Louis Bridge Revenue Refunding and Improvement Bonds, 3.75% Due January 1, 1985, and the said Perrin Shappley Jr. did then and there commit fraud upon the said Charles H. Cornwell by willfully, fraudulently and knowingly representing that:

1. The payment of the principal and interterest on the City of East St. Louis Bridge Revenue Refunding and Improvement Bonds was backed and guaranteed by the City of East St. Louis, and
2. That the price at which he, the said PERRIN SHAPPLEY Jr. was offering and selling such City of East St. Louis Bridge Revenue Refunding and Improvement Bonds was at the then current market price, and
3. That the East St. Louis Veterans Memorial Bridge, for which the City of East St. Louis Bridge Revenue Refunding and Improvement Bonds were issued, was in good sound financial condition,

and the said PERRIN SHAPPLEY, Jr. then and there knew that said representations were false and the said PERRIN SHAPPLEY, Jr. made said false representations for the purpose of inducing the said Charles H. Cornwell to purchase said security and the said false representations were misrepresentations of material fact;

*4th Count*

And the Grand Jurors aforesaid, upon their oaths aforesaid in said County and State, at said Term, do further present to said Court that PERRIN SHAPPLEY, Jr. on or about the 8th day of February, A.D. 1972, and anterior to the presentment of this indictment in the County and State aforesaid, did unlawfully and fraudulently sell and offer for sale to Charles H. Cornwell, a security to wit: City of East St. Louis Bridge Revenue and Refunding and Improvement Bonds, 3.75% Due January 1, 1985, and the said PERRIN SHAPPLEY, Jr. did then and there commit fraud upon the said Charles H. Cornwell by willfully, fraudulently and knowingly failing to disclose:

1. The true financial condition of the East St. Louis Veterans Memorial Bridge, for which the City of East St. Louis Bridge Revenue Refunding and Improvement Bonds were issued, and
2. That the revenues from the East St. Louis Veterans Memorial Bridge, for which the City of East St. Louis Bridge Revenue Refunding and Improvement Bonds were issued, was greatly diminished as a result of traffic being lost to an adjacent toll-free bridge, and
3. The prices at which said securities were offered to Charles H. Cornwell for the above described bonds were not reasonably related to the then current market price;

the said information being then and there well known by the said PERRIN SHAPPLEY Jr. and the said PERRIN SHAPPLEY Jr. then and there intentionally failed to disclose said information for the purpose of inducing the said Charles H. Cornwell to purchase said security and the said information being material facts;

AGAINST THE PEACE AND DIGNITY OF THE STATE!"

certainty necessary is that which gives the defendant notice of the particular offense with which he is charged. This case presents no problem of fair notice because the entire transaction with Dr. Cornwell was sufficiently identified. From a reading of the indictment, appellant should have known what he was charged with to enable him to prepare his defense. Therefore, the basic requirements of Art. 21.04 and Art. 21.11 are satisfied and the indictment is sufficient. Appellant's fifth ground of error is overruled.

■ In appellant's next ground of error, complaint is made of the court's refusal to suppress evidence of extraneous sales of securities to Dr. Pieratt in Moore County. Appellant relies upon the principle that an accused is entitled to be tried on the accusation made in the state's pleading and not for some collateral crimes or being a criminal generally. E. g., Albrecht v. State, 486 S.W.2d 97 (Tex.Cr.App.1972); Wagner v. State, 463 S.W.2d 432 (Tex.Cr. App.1971). It has been consistently recognized by this Court that this is the general rule; however, several exceptions have been established. The most important ones relating to the case at bar are those of scienter and common plan, scheme or design. Albrecht v. State, supra at pg. 100. The indictment contained four counts: that appellant unlawfully engaged in the business of a salesman of securities; that he unlawfully engaged in the business of a dealer in securities; and two counts

charging him with fraudulently misrepresenting material facts relating to the value and future of the bonds.[2] Under the first two allegations in the indictment, it was admissible to show appellant made other offerings and sales to the public in order to show that this particular sale was not an isolated transaction and that he was engaged as a dealer in securities. Under the fraud counts, the extraneous sales were admissible to show intent or guilty knowledge on the part of the appellant in fraudulently misrepresenting facts concerning the sale of the bonds. This Court has held that extraneous offenses of this nature are admissible for the purpose of showing that appellant was "dealing" in securities. Springfield v. State, 172 Tex.Cr. 341, 356 S.W.2d 940 (1962); Atwood v. State, 135 Tex.Cr. 543, 121 S.W.2d 353 (1938); cf. Vlassis v. State, 162 Tex.Cr. 484, 286 S. W.2d 934 (1956).[3] It is noted that the judge gave the proper limiting instructions to the jury regarding these collateral crimes. Appellant's ninth ground of error is overruled.

■ It is further complained that it was error for the trial court to permit the state to prove the extraneous offense involving Dr. Pieratt and not allowing appellant to explain the circumstances surrounding the alleged offense. In closely scrutinizing the bills of exception, it is apparent that the entire explanation proffered was inadmissible hearsay.[4] Accordingly, we overrule appellant's eighteenth ground of error.

2. See footnote 1 and last two counts involving fraud. The State elected not to take these counts to the jury.

3. Vlassis v. State concerned practicing medicine without a license. There, it was held proper to admit evidence of prior treatment of other persons.

4. The record reflects that appellant was indicted and tried in Moore County for theft of bonds sold to Dr. Pieratt. It resulted in a mistrial and the State never introduced evidence of the prior indictment. However, the State did prove the commission of this offense as a collateral crime at the trial of the instant case. The explanation the defense sought to admit was that the particular bonds

involved in the Pieratt transaction were delivered to the District Attorney to be later returned to Dr. Pieratt. From the record it appears that a Mr. Cascone made a deal with Dr. Pieratt that if Dr. Pieratt sent him twenty (20) bonds he would return twenty-two (22). Eleven (11) of the original twenty (20) bonds had been returned to Dr. Pieratt when Dr. Pieratt filed charges against appellant, Shappley, for theft of eighteen (18) other bonds. Thereupon, Cascone contacted Mr. Sheehan, an attorney, to serve as an intermediary to anonymously return certain bonds to Dr. Pieratt. Mr. Sheehan consulted with the District Attorney, Mr. Metcalf, and made arrangements for the return of twenty-seven (27) bonds. [This was computed by

Appellant further contends the Securities Act is an unreasonable restraint on interstate commerce and therefore unconstitutional. Although this precise issue has never been passed on by a Texas court, the validity of the Texas "Blue Sky" law has been upheld on other grounds. See Atwood v. State, supra; Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197 (1940). However, the United States Supreme Court has upheld similar statutes from Ohio, South Dakota, and Michigan as not being an unreasonable restraint on interstate commerce. Hall v. Geiger-Jones Company, 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480 (1917); Caldwell v. Sioux Falls Stock Yard Company, 242 U.S. 559, 37 S. Ct. 224, 61 L.Ed. 493 (1917); Merrick v. N.W. Halsey & Company, 242 U.S. 568, 37 S.Ct. 227, 61 L.Ed. 498 (1917).[5] In answering the contention that interstate commerce is unduly burdened, the court in Hall v. Geiger-Jones, supra 242 U.S. at pg. 558, 37 S.Ct. at 223, said:

"The provisions of the law, it will be observed, apply to dispositions of securities within the state, and while information of those issued in other states and foreign countries is required to be filed . . ., they are only affected by the requirement of a license of one who deals in them within the state . . . There is the exaction only that he who disposes of them there shall be licensed to do so, and this only that they may not appear in false character and impose an appearance of a value which they may not possess,—and this certainly is only

an indirect burden upon them as objects of interstate commerce, if they may be regarded as such. It is a police regulation strictly, not affecting them until there is an attempt to make disposition of them within the state . . . Such regulations affect interstate commerce in them only incidentally."

█ The court reasoned that the regulated activity primarily occurs *within* the state and only incidentally touches interstate commerce. Without any attempt to dispose of securities within a state, there is no regulation. Such reasoning is sound and supports the announced purpose of the Act—to protect the public from fraud and imposition by those engaged in selling worthless securities. Atwood v. State, supra. We, therefore, hold that any incidental burden on interstate commerce created by the Act is insubstantial and not unreasonable. This is dispositive of appellant's third ground of error.

█ It is also maintained that testimony was erroneously admitted from a Mr. Stewart of an investment banking firm in Chicago. He testified to the effect that it was probable that no interest would be paid on the bonds in January 1974. This evidence was relevant to the issue of the worthlessness of the bonds as charged in the fraud counts. It appears that the value of the bonds was greatly diminished. This was due to the fact that the bonds were issued on a toll bridge in East St. Louis and some years later a federally-funded free bridge was constructed nearby which com-

---

dropping the two bonus bonds Cascone promised Dr. Pieratt and adding the remaining nine (9) owed plus a mysterious eighteen (18) other bonds.] Therefore, the explanation of the eighteen (18) bonds allegedly sold to Pieratt by appellant was that they were included in the twenty-seven (27) Cascone delivered to Sheehan who in turn delivered to Metcalf without ever designating who they were from or what they were for. Cascone supposedly claimed Pieratt sent him the eighteen (18) bonds by mistake. It was also shown that the present Mrs. Shappley is the former Mrs. Cascone. Mr. Cascone was also

under indictment in Moore County. The bulk of this testimony was elicited from Mr. Sheehan who relied on what Cascone had told him. This is clearly offered for the truth of the matter asserted therein and is inadmissible hearsay. The State urged that even had it been admissible it tended to confuse the issues to the jury. We are inclined to agree with this proposition and it would not have been an abuse of discretion for the trial judge to refuse to admit this evidence.

5. See also 15 A.L.R. 262 and cases cited therein.

peted with the toll bridge. After Mr. Stewart was qualified as a witness,[6] he testified to the decline in revenues from the bridge from $2,477,000.00 in 1965 to $498,000.00 in 1972. Such information was based on an audit prepared for the city of East St. Louis which consisted of a summary of operating results and cash forecast for 1973. Objection is had to the following testimony:

"Q (Prosecuting Attorney) . . . [D]oes it (the audit) indicate whether or not interest on the bonds will be paid in January of 1974?"

[At this point the defense counsel interposed his objection to the question as being conjecture and speculative in nature which was overruled.]

"A (Mr. Stewart) From the last sentence of paragraph two of the summary, [it] states, 'all reserves will be used to meet the July 1, 1973 and January 1, 1974 maturity, and if the present level of operation continues, the January 1, 1974 payment will fall $16,440.00 short.' "

Mr. Stewart went on to testify that should this occur, the value of the bonds would severely decline. He further testified that each year the city of East St. Louis publishes an audit of the operation of the bridge. It is recorded in the public records and is mailed to dealers and various bondholders who have requested it. He maintained that the report was widely disseminated throughout the municipal bond industry.

 Without addressing ourselves to the issue of whether or not Mr. Stewart was properly qualified as an expert witness, the audit itself contained the speculation complained of. The audit was admissible under the official records exception to the hearsay rule. Art. 3731a, Sec. 2, V. A.T.S., provides:

"Any written instrument which is permitted or required by law to be made, filed, kept or recorded (including but not limited to certificate, written statement, contract, deed, conveyance, lease, concession, covenant, grant, record, return, *report* or recorded event) by an officer or clerk of the United States or of another state or nation or of any governmental subdivision of any of the foregoing . . . shall, so far as relevant, be admitted in the courts of this State as evidence of the matter stated therein, subject to the provisions in Section 3." (Emphasis added)

Section 3 concerns notice to the adverse party by delivering a copy thereof to him a reasonable time before trial. The requisites of the statute are satisfied in this case. The report was attested by city clerk, certified by the judge of the Circuit Court and before trial a copy of the audit was delivered to appellant. A proper objection would be directed to the weight given by the jury of such speculative evidence and not to its admissibility. Since the audit is admissible as an official written statement under Art. 3731a, V.A.T.S., and it contains the speculative statement, appellant's ground of error is overruled. Likewise, appellant's ground of error regarding Dr. Cornwell's testimony of how he discovered the bonds were worthless is harmless error. As previously discussed, evidence showing the decreased value of the bonds had already been properly admitted. If there was any error in allowing Dr. Cornwell's testimony, it cannot be said to have prejudiced appellant since evidence of the worthlessness of the securities was already before the jury. Being harmless error, we overrule the ground of error.

Appellant has urged some six grounds of error which are not briefed. Such conten-

---

6. Mr. Stewart is an attorney in the legal department of John Levine & Co., the firm which did the underwriting of the original bond issue in question.

tions are not set forth in a way that the points of objection can be clearly identified and understood by the Court, as required by Art. 40.09, Sec. 9, V.A.C.C.P. Nash v. State, 486 S.W.2d 561 (Tex.Cr.App.1972); Nichols v. State, 474 S.W.2d 205 (Tex. Cr.App.1971); Frey v. State, 466 S.W.2d 576 (Tex.Cr.App.1971). However, in the interest of justice, we have reviewed the complaints as best they can be understood and find them without merit.

 The remaining ground of error urges that the judgment be reformed because when the jury returned its guilty verdict and recommended probation the trial court suspended the punishment of five years' confinement but ordered appellant to pay the $5,000 fine. The issue is well settled in this Court that when the jury has recommended probation on a fine the court may not require that it be paid. Faugh v. State, 481 S.W.2d 412 (Tex.Cr. App.1972). Also, where the jury has recommended probation and the punishment assessed was imprisonment and a fine, the court must probate both. Johnson v. State, 473 S.W.2d 939 (Tex.Cr.App.1971).

The order should be reformed to show the $5,000 fine is probated to conform to the verdict. As reformed, the order granting probation is affirmed. If the fine has actually been paid, it is ordered that it be remitted to the appellant.

*As reformed, the judgment is affirmed.*

## OPINION ON STATE'S MOTION FOR REHEARING

DAVIS, Commissioner.

The State urges that our original opinion was incorrect in reforming the order

granting probation "to show the $5,000 fine is probated to conform to the verdict." The State argues that Johnson v. State, Tex.Cr.App., 473 S.W.2d 939 and Faugh v. State, Tex.Cr.App., 481 S.W.2d 412 are distinguishable in that in each of those cases the jury thought the fine would be probated and entered a verdict to that effect. In the instant case, the court instructed the jury that it could recommend that the defendant be granted probation, subject to the conditions set forth in Sec. 6 of Art. 42.12, Vernon's Ann.C.C.P.[1] The charge recited those conditions, the pertinent one being: "h. Pay his fine, if one be assessed . . . . "

The State reasons that where, as in the instant case, the court informed the jury of the court's authority to require the payment of any fine assessed, and the jury was not misled in any manner in assessing a fine and recommending its probation, then the recommendation of probation by the jury in regard to the fine becomes advisory only upon the court. It is *argued* that if condition (h) of Sec. 6 of Art. 42.-12, supra, cannot be imposed as a condition by the court if the jury recommends probation, then the court may not impose any other conditions since such would be a limitation upon the jury's right to recommend probation.

Section 3a of Art. 42.12 provides that "in all eligible cases, probation *shall* be granted by the court if the jury recommends it in their verdict" (emphasis supplied), and the court in the instant case instructed the jury pursuant thereto that if it recommend probation in its verdict, "it shall be granted by the court."

The court instructed the jury at the punishment stage of the trial that the punish-

---

1. Article 42.12, Sec. 6, V.A.C.C.P., sets forth the following conditions of probation:
"a. Commit no offense against the laws of this State or of any other State or of the United States;

"b. Avoid injurious or vicious habits;

"c. Avoid persons or places of disreputable or harmful character;

"d. Report to the probation officer as directed;

"e. Permit the probation officer to visit him at his home or elsewhere;
"f. Work faithfully at suitable employment as far as possible;
"g. Remain within a specified place;
"h. Pay his fine, if one be assessed, and all court costs whether a fine be assessed or not, in one or several sums, and make restitution or reparation in any sum that the court shall determine; and
"i. Support his dependents."

ment for the offense (selling securities as a salesman without being registered) is "a fine of not more than Five Thousand Dollars ($5,000.00) or confinement in the Texas Department of Corrections for not more than ten (10) years, or by both such fine and imprisonment."

The jury verdict reads:

"We, the Jury, having found the defendant, Perrin Shappley, Jr., guilty of selling securities as a salesman without being registered as charged in the first count of the indictment, assess his punishment at 5 years in the Texas Dept. of Corrections and a fine Five Thousand Dollars (5,000.00). We further find that the defendant has never been convicted of a felony in this State or in any other state and recommend the probation of the sentence.

/s/ Dilton S. Sandifer
Foreman"

If the jury had elected to assess a fine only as punishment and recommend probation, the court, under the positions urged by the State, could have circumvented the entire jury verdict and rendered its recommendation meaningless. Faugh v. State, supra. Further, under such circumstances, what penalty would be required of the defendant if probation should later be revoked? Faugh v. State, supra.

■ The argument that the jury verdict recommending probation is advisory only to the fine is contrary to the mandatory provision of Sec. 3a of Art. 42.12, V. A.C.C.P., providing that "probation shall be granted by the court if the jury recommends it in their verdict."

While Sec. 3a of Art. 42.12 further provides, "If probation is granted by the jury the court may impose only those conditions which are set forth in Section 6 hereof," it

is noted that payment of fine is the only condition set forth under Sec. 6 which relates to the penalty. Obviously, conflict does exist in the foregoing provisions of Sec. 3a. The court should avoid a construction which will render an act or provision "futile or purposeless." 53 Tex. Jur.2d, Statutes, Sec. 164. Section 3a provides for a defendant making a motion for probation before the jury and places a greater burden in both pleading [2] and proof on the defendant seeking a recommendation of probation from the jury, requiring:

"In no case shall probation be recommended by the jury except when the sworn motion and proof shall show, and the jury shall find in their verdict that the defendant has never before been convicted of a felony in this or any other State."

To adopt the interpretation urged by the State would render a defendant's right to make his motion for probation before a jury "futile and meaningless" since the judge could circumvent the jury verdict.

In Castro v. State, 118 Tex.Cr.App. 53, 42 S.W.2d 779, it was held that the action of the court in disregarding the recommendation of the jury that the sentence be suspended was void. There the Court said the action of the trial court violated the ". . . fundamental principle that the judge presiding over a trial has no right and no power to change a verdict rendered by the jury unless with their consent and before their discharge."

To uphold a court's action in requiring payment of the fine where the jury has recommended probation would allow the court to exact a portion or all of the punishment, as the case may be, in order for a defendant to obtain the benefit of the jury's recommendation. See Faugh v. State, supra.

2. In a Special Commentary by Presiding Judge Onion following Art. 42.12, V.A.C.C.P., it is stated, "Like old Article 781d, there is no requirement for a written motion for pro-

bation when the trial is before the judge alone, though it is generally the better practice to require one."

In the recent case of Flores v. State, Tex.Cr.App., 513 S.W.2d 66, this Court said:

"While it is considered good practice to enumerate in the court's charge the probationary conditions which the court may impose if probation is recommended by the jury, the failure to so enumerate the said conditions is not harmful to the accused or restrictive of the court's authority under the statute."

It follows that the mere reciting of the probationary conditions in the court's charge cannot serve to enlarge upon the court's authority under the statute where the jury recommends probation.

For the reasons stated, the motion for rehearing is overruled.

Opinion approved by the Court.

DOUGLAS, J., concurs in result reached in both opinions.