# NOVEMBER 30, 1938

Roger J. Atwood v. The State.

No. 19620.   Delivered October 19, 1938.
Rehearing denied November 30, 1938.

The opinion states the case.

*Rogers & Spurlock,* of Fort Worth, for appellant.

*Bonner, King, Dawson & Jones,* of Wichita Falls, amici curiae.

*Lloyd W. Davidson,* State's Attorney, of Austin, *Wm. C. Culp,* County Attorney, of Gainesville, and *B. P. Matocha,* of Austin, Attorney, Securities Division, Secretary of State, for the State.

CHRISTIAN, JUDGE.—The offense is selling securities without having been registered as a dealer; the punishment, a fine of $500.00.

The prosecution proceeded under Chapter 100, General Laws of the State of Texas, passed at the Regular Session of the 44th Legislature. We quote the pertinent provisions of the Act, as follows:

"Section 1. This Act shall be known and may be cited as 'The Securities Act.'

"Sec. 2. The following terms shall, unless the context otherwise indicates, have the following respective meanings:

"(a) The term 'security' or 'securities' shall include any share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or other evidence of indebtedness, any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not.

"(b) The term 'company' shall include a corporation, a person, joint stock company, partnership, association, company, syndicate trust, incorporated or unincorporated, heretofore or hereafter formed under the laws of this or any other State, country, sovereignty or political subdivision thereof. * * *

"(c) The term 'dealer' shall include every person or company, other than a salesman, who engages in this State, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or dealing in any other manner in any security or securities within this State. * * *

"Sec. 3. Exempt transactions. Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale,

solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions:

"(c) Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities, provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended, either directly or indirectly, for the benefit of any company or corporation within the purview of this Act. * * *.

"Sec. 37. The provisions of this Act are severable, and in the event that any provision thereof should be declared void or unconstitutional, it is hereby declared that the remaining provisions would have been enacted notwithstanding such judicial determination of the invalidity of any particular provision or provisions in any respect, and said Sections shall remain in full force and effect."

Provision is made in the Act for registration and the issuance of permits by the Secretary of State. Any dealer, salesman or agent aggrieved by any decision of the Secretary of State may appeal to the district court of Travis County. Section 28.

Section 30 reads as follows: "Any dealer, agent, salesman, principal, officer, or employee who shall, within this State, sell, offer for sale or delivery, solicit subscriptions to or orders for, dispose of, invite offers for, or who shall deal in any other manner in any security or securities, without being registered as in this Act provided, or who shall within this State, sell, offer for sale or delivery, solicit subscriptions to and orders for, dispose of, invite orders for, or who shall deal in any other manner in any security or securities issued after the effective date of this Act without having secured a permit as herein provided, or who knowingly makes any false statement of fact in any statement or matter of information required by this Act to be filed with the Secretary or State, or in any advertisement, prospectus, letter, telegram, circular, or any other document containing an offer to sell or dispose of, or in or by verbal or written solicitation to purchase, or in any commendatory matter concerning any securities, with intent to aid in the disposal or purchase of the same, or who knowingly makes any false statement or representation concerning any registration made under the provisions of this Act, or who is guilty of any fraud or fraudulent practice in the sale of, offering for sale or delivery of, invitation of offers for, or dealing in any other manner in any security or securities, or who shall knowingly participate

in declaring, issuing or paying any cash dividend by or for any person or company out of any funds other than the actual earnings of such person or company or from the lawful liquidation of the business thereof, shall be deemed guilty of a felony and, upon conviction thereof, shall be sentenced to pay a fine of not more than One Thousand Dollars ($1000), or imprisoned in the penitentiary for not more than two (2) years, or by both such fine and imprisonment."

It was within the police power of the Legislature to constrain the conduct of dealers in securities to the end that the public might be protected "against the imposition of unsubstantial schemes and the securities based upon them." Hall v. Geiger-Jones Company, 242 U. S. 539. Appellant apparently concedes that the purpose of the law is legal, but contends that the Legislature has transcended constitutional bounds in abridging an owner's right to sell his real property. He states his first proposition in language as follows: "The right to alienate one's own property is an indefeasible incident to ownership, and any legislative enactment that attempts in any manner to abridge an owner's right to sell, or otherwise dispose of his property is in direct conflict with Section 1 of Article 14 of the Constitution of the United States, and Article 1, Section 19, of the Constitution of Texas."

The law is a regulation of business. It is designed to protect the public against the frauds of those engaged in selling securities which represent nothing substantial. State v. Nordstrom, 210 N. W. 1001. We do not concede that the constitutional provision to which appellant refers should be held to restrain legislative action in reasonably regulating the sale by an owner of the surface rights in his real property. We leave the question undecided and refer to the fact that appellant was a dealer in oil and gas leases. Documents evidencing an interest in or under oil and gas leases are securities within the terms of the Act, and dealers therein must register. In State v. Pullen, 192 Atl. 473, the Supreme Court of Rhode Island considered the question whether a provision of the securities act of that State requiring registration by dealers in certificates of interest in an oil, gas and mining lease was applicable to salesmen engaged in the sale of oil royalties. In reaching the conclusion that the provision applied, the court used language as follows:

"The respondent contends that such documents are written evidence of an interest in realty and therefore not within the meaning of the language of the section next above quoted. He admits that this section has not heretofore been construed to

appiy only to personal property and not to realty, but he argues that it should be so construed because it has been held by this court, in construing another statute (Gen. Laws 1923, c. 59, secs. 10, 11), that the word 'security' did not include certain land trust certificates as such certificates were muniments of title to an equitable interest in real estate in Ohio. Narragansett Mutual Fire Ins. Co. v. Burnham, 51 R. I. 371, 154 A. 909. In that case the court was considering a statute relating to the taxation of intangible personal property, and it was important to determine the true nature of these trust certificates as either realty or personalty. Finding that they were muniments of title to real estate situated outside of this State, the court held them not to be a security taxable under the above statute. That is all the case holds.

"The respondent also cites a Texas case which holds the lessor's interest in an oil and gas lease, substantially the same as the one before us in the instant case, to be an interest in real estate. Waggoner Estate v. Wichita County, Texas, 273 U. S. 113, 47 S. Ct. 271, 71 L. Ed. 566; Id. (C. C. A.) 3 F. (2d) 962. That case was concerned with the question of the right to tax such interest as personalty in a county different from the county in which the leased land was situated. The case is of no assistance in solving the problem here, except to establish the point that this so-called oil royalty which this respondent seeks to sell in Rhode Island is treated as real estate, or at least an interest in realty in Texas. The respondent has cited no case from a court of last resort in Texas or in any other state which holds that a 'mineral deed,' such as the one here, is not a security within the meaning of a statute similar in content and purpose to our statute, regulating the sale of securities."

See, also, People v. Estrada, 74 Pac. (2d) 1085; People v. Daniels, 76 Pac. (2d) 556.

We quote further from the opinion, as follows: "In construing our statute (G. L. 1923, c. 273), we are not controlled by what was said in Narragansett Mutual Fire Ins. Co. v. Burnham, supra, (51 R. I. 371), when the court was construing a wholly different subject-matter, namely, taxation. From the viewpoint of taxation, it is of considerable importance whether the property which is assessed is realty or personalty. In the regulation of the sale of investments or investment contracts, the technical nature of the interest sold, whether realty or personalty, is of slight consequence, if any. The design of our statute is to protect the public from fraud and misrepresentation in the investment of its funds in a wide variety of enterprises,

regardless of the technical form in which shares in such enterprises may be offered for sale. It is paternalistic in purpose and seeks to save the too credulous investor from his own lack of acumen in detecting the false and fraudulent nature of schemes devised to lure his money away from him with scant hope of its return, or of its investment in such schemes ever yielding an income. * * * ."

In State v. Gerritson, 265 Pac. 422, the Supreme Court of Oregon considered the contention of Gerritson that the Blue Sky Law of that State was unconstitutional as to a provision preventing the owner of stock as an individual from disposing of it unless he complied with the terms of the statute. This contention was overruled, the court saying [p. 424] :

"It has been determined that the Blue Sky Law is constitutional both by this court and the Supreme Court of the United States where similar statutes from other states are involved. The defendants contend that only one feature of the Blue Sky Law is unconstitutional, that one feature being the provision in the statute preventing the owner of stock. as an individual from disposing of the stock in repeated and continuing transactions of a similar nature. This contention has already been passed upon by this court adversely to the defendants. In State v. Barrett, 121 Or. 57, 64, 254 P. 198, 200, this court, speaking through Mr. Justice RAND, said:

" 'There was sufficient evidence offered to show that the defendant in dealing with this stock, was not within the provisos, even though there had been evidence of his ownership of it. His course of dealing with the stock consisted of repeated and continuing transactions all looking to the sale and transfer of the stock to the public generally, and the case was one where stock of but little if any value was being repeatedly sold to the public at its par value. Under the evidence defendant clearly violated the statute and the motions were properly overruled.'

"In the Barrett Case, as in this, defendant Barrett contended:

" 'That in making the sale of the stock in question, he was merely selling his own property and therefore that the court erred in overruling his motions for a directed verdict and in arrest of judgment.'

"The same question was also raised in the case of Hall v. Geiger-Jones Co., 242 U. S. 539, 555, 37 S. Ct. 217, 61 L. Ed. 480, and in Merrick v. Halsey, 242 U. S. 568, 37 S. Ct. 227, 61 L. Ed. 498. In the last case cited the same question presented in the instant case with ability was also presented very earnestly in the argument for appellees in page 574. Defendants

rely with confidence on the case of People v. Pace, 73 Cal. App. 548, 238 P. 1089. That case supports the contention of defendants. The defendants' position is very forcibly stated in the opinion, but we can not follow it. We think that both our court and the Supreme Court of the United States have heretofore held the contrary view, as shown by the citations above."

Granting that appellant was the owner of the oil and gas lease upon which the indictment is predicated, it is observed that his course of dealing with oil and gas leases generally constituted him a dealer within the purview of the statute. It follows that, if effect is to be given to the announcement of the judicial precedents, we must hold that the Legislature transcended no constitutional limitation in requiring owners of securities to register when the things they do place them in the category of dealers. We think appellant's contention should be overruled.

If appellant was not the bona fide owner of the oil and gas lease involved in the prosecution, he can not be heard to question the constitutionality of the provisions of the Act requiring an owner of securities to register if he is engaged in the business of selling securities "either for all or part" of his time. This Court will not pass upon the validity of any part of the statute which is not shown to have been violated. 9 Tex. Jur. 470; Hoffman v. State, 20 S. W. (2d) 1057. It is questionable whether in fact appellant was the owner of such security. We advert to the testimony. Appellant devoted all of his time to selling oil and gas leases. A witness for the State testified that appellant told her that he was "a dealer in securities." Further, it appears that appellant would procure leases upon the condition that if he made a sale of such leases he would pay the land owner an agreed sum; otherwise, he would surrender the lease to the land owner. The conveyance to the appellant by the land owner appears to have been made for the convenience of the parties and without purpose on the part of either that the appellant should become the owner of the lease. The indictment in the present case discloses the assignment of an oil and gas lease by appellant to Mrs. Ruth Secor, it being recited in such assignment that appellant, under a lease from E. A. Felker, was the owner of the oil and gas under 28 acres of land described in said lease and that, in consideration of ten dollars and "other good and valuable consideration," appellant assigned his interest in said lease to Mrs. Secor. Referring to the execution of the lease in question, E. A. Felker testified, in part, as follows: "I stated a moment ago that lease was not

paid for. Mr. Atwood [appellant] told me that he would give me, I believe, three dollars an acre for it. He said he had a man that would buy the lease and he would give me three dollars an acre for it. I gave him the lease with the understanding that if he sold it he was to pay me that, and if not the lease was to be returned to me. I have a draft for that money, but it was understood if he didn't sell the lease he didn't have to take it. Mr. Allen, I believe, returned the lease to me subsequently. I really don't know whether the lease had ever been recorded by Mr. Atwood or not. This instrument here [referring to the lease] which you have handed me does not show to have been recorded. I gave Mr. Atwood a lease on another piece of property and he sold it and paid me for that. When he sold that other piece of property he sent me the money that he had agreed to pay me for it. In my dealings with Mr. Atwood he paid me for the land he leased and he sent me back the lease he couldn't sell. I have another lease that I mentioned, the 12 acre lease. Mr. Atwood was selling this lease for me. That was made direct to him. I don't know who he sold it to. I was leasing the land to him provided he could sell it, and he did sell it, or at least he paid me for the 12 acres. * * * He told me he knew lots of oil men and he believed he had a man that would buy the lease. I didn't suppose the 28½ acre lease [referring to the lease appellant assigned to Mrs. Secor] was ever sold, because I didn't get any money for it and the lease was returned to me."

Mrs. Secor testified that she had accompanied appellant on occasions when he visited land owners for the purpose of securing leases "so that he could sell them." Further, she said that appellant told her he was a dealer for Deering and Company. A notary public, who accompanied appellant on many of his trips, testified, in part, as follows: "He [appellant] stated to me at the time that I first became acquainted with him that he was a dealer or broker. He said that he had wide connections throughout East Texas, Dallas, and Fort Worth, among oil operators and that he could finance any oil operations for the sale of acreage in drilling a well. * * * I was engaged to do his notarial duties. * * * I went with him on his visits through the country in buying and selling leases, and he actually bought and sold oil and gas leases."

Looking to the testimony in its entirety, it might be said that appellant was not the bona fide owner, in contemplation of the statute, and that his method of dealing was to enable him to dispose of the interest owned by others.

Appellant asserts discrimination alleged to arise from the exemption from the Act of sales of securities by an owner when made "in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities." The classification is not deemed arbitrary. Touching similar exemptions, which it was alleged resulted in discriminations, the Supreme Court of the United States, in Hall v. Geiger-Jones Company, used language as follows:

"We can not give separate attention to the asserted discriminations. It is enough to say that they are within the power of classification which a State has. A State 'may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed. * * *. If a class is deemed to present a conspicuous example of what the Legislature seeks to prevent, the 14th Amendment allows it to be dealt with although otherwise and merely logically not distinguishable from others not embraced in the law.' Central Lumber Co. v. South Dakota, 226 U. S. 157, 160, 57 L. Ed. 164, 169, 33 Sup. Ct. Rep. 66. The cases were cited from which those propositions were deduced. To the same effect is Armour & Co. v. North Dakota, 240 U. S. 517, 60 L. Ed. 776, 36 Sup. Ct. Rep. 440, Ann. Cas. 1916D, 548."

It is insisted that the Act is invalid in that the terms "otherwise engaged" and "permanently or temporarily in selling securities" are not sufficiently definite to meet the requirements of Article 6, P. C., which provides that a provision of a penal law which is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed, or from some other written law of the State, shall be regarded inoperative. It has been observed that "sale of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities" is exempted from the operation of the Act. We do not enter into an extended discussion of the question. We think, under the terms of the Act, when the nature of the evil which the Legislature desired to curb is considered, that the ordinary person can understand what he is permitted to do and what he is forbidden to do. At all events, appellant appears to have been permanently engaged as a dealer in securities. If

it should be held that the word "temporarily" is indefinite to the extent that it offends against the provisions of Article 6, supra, it does not follow that the Act in its entirety is invalid. It was the declared intention of the Legislature, as expressed in Section 37 of the Act, that, if any provision thereof should be held invalid, such holding should not affect or invalidate any other provision or provisions in any respect. See Anderson v. State, 21 S. W. (2d) 499.

The indictment alleged the sale of oil and gas leases by appellant to Ruth D. Secor and others. Also it was averred that appellant was a dealer in securities and had not registered in the office of the Secretary of State. A lease assigned by appellant to Mrs. Secor is set out verbatim in the indictment. We think appellant's contention that the indictment is duplicitous is without merit. It was necessary for the State to allege and prove that appellant was a dealer. The averment that he assigned leases to persons other than Mrs. Secor and that he was a dealer in securities does not, in our opinion, charge a separate and distinct offense, but merely emphasizes the allegation that appellant was a dealer generally in securities.

Nor are we in accord with appellant's contention that the assignment of the oil and gas lease to Mrs. Secor passed no title because of an insufficient description of the land. We quote the description, as follows:

"Whereas, on the 12th day of September, 1936, a certain oil and gas mining lease was made and entered into by and between E. A. Felker and wife, Serena Felker, Lessor, and Roger J. Atwood, Lessee, covering the following described land in the County of Cooke, and State of Texas to-wit: The west 28 acres of the following described 82½ acres of land out of the Thos. Toby Survey, Abstract No. 1061; Beginning at the S. W. corner of said survey; thence East 1540 varas; thence North 301 varas; thence west 1540 varas; thence south 301 varas to the place of beginning and being the same land described in deed from Wm. Hudson and E. Enderby to I. Felker, recorded in Vol. 58, page 540, Deed Records of Cooke County, Texas. Said lease being recorded in the office of the County Clerk in and for said County in Book——page——, reference to which is hereby made."

It appears to be a simple matter to definitely determine the location of the 28 acres above mentioned.

It is shown in bill of exception No. 2 that counsel for the State, in argument to the jury, used language as follows: "We

have proved that the defendant was a dealer in securities. He did not deny—." The bill recites that appellant objected and excepted to the language "He did not deny" as being a comment upon appellant's failure to testify. It is not shown what action the court took when the objection was made. As far as the bill reflects the matter, the objection might have been overruled and language thereafter employed by counsel for the State showing definitely that he was not referring to appellant's failure to testify upon the trial. Stated in another way, the argument of counsel for the State might have referred to appellant's failure on occasions other than the trial to deny that he was a dealer in securities. Under the circumstances, we are of opinion the bill fails to reflect error.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant has filed an exhaustive motion for a rehearing, and also there has been filed an interesting amicus curiae brief by attorneys, and these briefs have presented both novel and troublesome questions for our decision.

It is vigorously contended that an oil and gas lease is not a security, as the same is contemplated under the statute here being considered because of the peculiar wording thereof, in that the classification of securities seems to be wholly composed of matters that are entirely represented by certificates of value only, and they invoke the rule of ejusdem generis to substantiate their proposition as applied to the latter portion of the statute defining securities as follows:

Section 2(a), Vernon's Ann. Civ. St., Art. 600a, defining securities, among other things, says: " * * * certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate * * * or any other instrument commonly known as a security, whether similar to those herein referred to or not."

We confess our inability to see why there should. be any necessity for an invocation of the doctrine of ejusdem generis, or of like import, when the text is simple and plain, and defines

any instrument representing any interest in or under an oil, gas or mining lease, fee or title as a security. The rule of ejusdem generis is not applicable here on account of the fact that the very definition itself eliminates the application of such rule wherein it states: "or any other instrument commonly known as a security, whether similar to those herein referred to or not," thus abrogating the application of the doctrine of similarity, or like import. True it is that a statute must be based upon reasonable grounds, and can not go beyond the bounds thereof in defining and denouncing an offense. The denomination by the Legislature of an instrument conveying an interest in an oil, gas or mining lease as a security, is not deemed an unreasonable exercise of the police power; nor does the regulation of a dealer therein transcend the power of the State.

We also say that in our judgment the wording of the statute under consideration intended to and did include, under the characterization of securities, an instrument representing an interest in an oil or gas lease. That persons wishing to engage in the sale of such leases were required to obtain a permit to do so, and that a failure to obtain such a permit is punishable under the provisions of such statute.

That appellant was a person dealing in such securities is plain from the testimony. That he endeavored to bring himself under the exemption provided for in Section 3(c) of the statute [Vernon's Ann. Civ. St., Article 600a, Section 3(c)] is also plainly seen from the method which he adopted in his dealings with the persons who were the actual owners of the land represented by the leases that he was endeavoring to dispose of.

In our opinion, under the facts, appellant was not the owner of the lease disposed of, and we think the testimony clearly shows that appellant was not engaged in [Section 3(c)] "Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities. * * * ." The leases in which he was dealing were not actually his own property, but he had adopted the policy of having the owner of the land execute a lease to him (appellant), and, in the event of the sale of such lease to another, he would accept and record such lease, and then transfer same to the purchaser, but in the event of no sale thereof, the lease would be returned to the land owner, or destroyed. In our judgment this was but a scheme or device practiced by appellant for the evasive purpose of claiming that the security was his own property.

556

Complaint is also made of the use of the word "temporarily" on account of its indefiniteness, and the uncertainty to be encountered in the construction thereof as opposed to permanent. We think an answer in the present instance finds itself in the fact that beyond question the testimony shows appellant to have been fully and permanently engaged in the sale of such securities, and as having made many sales as such, and the word "temporarily" is not applicable to the facts herein shown, and under the saving clause in this statute the word "temporarily" can be disregarded and you still find a violation of the law in the word "permanent."

Complaint is also made because of the fact that the security alleged to have been sold to Mrs. Secor is an imperfect instrument in that while it purported to transfer a certain portion of an oil lease, on account of a defective description therein it failed to convey any rights of any kind in and to said land so attempted to be leased. This is not a true position, but if true, then we can only say such a condition the more strongly illustrates the position herein taken in the original opinion.

In our opinion, the very thing that has here happened is the mark at which the Legislature was directing this law, and that is the sale of a security that is couched in such terms as to tempt the unwary to invest their funds therein, and then some flaw, defect or weakness be found rendering the same valueless to the loss of the investor and the unfair gain of the seller. The purpose of the law is salutary, and establishes a supervision and surveillance over matters oftentimes unknown to the investor but known to the seller who is forced thereunder to obtain a permit, and who presumptively has established his good faith before an officer of the State, after which the public should have the right to rely upon any representations made by such seller as a licensed purveyor of such securities.

There should be no alarm felt by honest dealers in such securities that their business will suffer interference, that they shall be called upon to obtain a special dispensation each time they desire to dispose of any security in their possession. Having once obtained their permit to sell such securities, the dealers' rights are fixed and determinable only by his own acts, until the time for a renewal thereof appears. As was said by Justice McKENNA in Hall v. Geiger-Jones Co., 242 U. S. 539: "Inconvenience may be caused and supervision and surveillance, but this must yield to the public welfare, and against counsel's alarm of consequences we set the judgment of the State," and, we might add, the safeguarding of the rights of its citizenship.

We think this cause has been properly disposed of in the carefully worked out original opinion herein, and the motion is therefore overruled.