## SHRIVER v. STODDARD.
### No. 13626.

Court of Civil Appeals of Texas. Dallas.

June 29, 1945.

Rehearing Denied July 27, 1945.

Callaway & Reed, R. E. Kidwell, and O. D. Montgomery, all of Dallas, for appellant.

Thompson, Knight, Harris, Wright & Weisberg and Dwight L. Simmons, all of Dallas, for appellee.

BOND, Chief Justice.

The parties to this suit will be designated here as they were in the court below. Plaintiff M. W. Shriver seeks to recover from defendant J. B. Stoddard broker's commission or, in the alternative, for reasonable compensation on sale of securities owned by eighteen stockholders of Circle Oil Company, a corporation. It was stipulated in the court below and conceded in this appeal, that during the negotiations and at the time the alleged cause of action arose, plaintiff was not a licensed dealer in securities under the provisions of "The Securities Act". Art. 600a, Vernon's Ann. Civ. Stat.

On motion of defendant, perforce of plaintiff's pleadings and the stipulation that he was not licensed by the Secretary of State as a dealer in securities under the provisions of Art. 600a, Vernon's Ann.Civ. St., the trial court entered order dismissing the suit, from which this appeal is prosecuted.

Plaintiff's petition reveals, pertinent here, that plaintiff, on or about November 28, 1943, made a trip from Dallas, Texas, to Houston, Texas, for the purpose of calling upon the managing officers of the Circle Oil Company to ascertain if it, or its stockholders, were interested in selling its properties, or stock, and upon what terms, price, etc.; and, at that time, advised Mr. Kennard, manager, that he had a letter from Algord Oil Company, signed by Allen Guiberson of Dallas, Texas, authorizing him to negotiate for purchase of oil properties for and on behalf of his company. Thereupon, Kennard informed plaintiff that he, Kennard, had authority from the stockholders of his company to sell the stock certificates and all underlying properties of the corporation, outlining to him all of its oil securities, the amount of production, assets and liabilities, cost of operation, net income, etc., and the price of $1,250,000 net to the company, plus a commission or bonus to himself of 5% of the selling price, provided the sale would be consummated before January 1, 1944; and that plaintiff might contact his prospective purchaser and bring seller and purchaser together at some convenient place to discuss the proposed sale. Plaintiff alleges .that after the above conference with Kennard he returned to Dallas, and there discussed the proposed sale with a Mr. Browning, giving him the details as above related by Kennard. Thereafter, Mr. Browning informed defendant J. B. Stoddard that plaintiff had the properties of the Circle Oil Company for sale and that he, Stoddard, could purchase the stock for about $1,350,000 net to the seller. Subsequently plaintiff, having been advised of Stoddard's interest in the transaction, called upon him for a conference to discuss the sale of the corporate stock of the Circle Oil Company, advising him that he had been working on the deal for a Mr. Allen Guiberson, but that Guiberson was in Mexico City and not available to go ahead with it, and that any purchase

of the stock must be completed before January 1, 1944. That plaintiff gave defendant all information with respect to the company's properties, earnings, etc., told him he would have full reports thereon within a few days, and that the price he had, to-wit, $1,250,000, was net to the sellers, and that the purchaser would have to pay his "broker's commission." "Thereupon defendant inquired as to how much commission plaintiff wanted, and plaintiff told him a commission of 5% of the cash sales price of $1,250,000. That defendant then told plaintiff that that was too much, and thereupon plaintiff asked defendant how much commission would not be too much, to which defendant replied, 'Well, bring the property on in and we will see about it.'" Plaintiff further alleged that the defendant, after getting the information and details of the sale price, etc., began direct negotiations with the managing officers of the Circle Oil Company, resulting in consummation of the deal between themselves, defendant purchasing the stock and physical properties of the corporation for a total consideration of approximately $1‑347,600.

It is further alleged in the petition, and appropriately assigned in appellant's brief in this appeal, that plaintiff was not employed by the owners of the stock or the corporation to consummate a sale for them, nor was he representing the purchaser, the defendant, in the transaction; that the only thing plaintiff did was act as a "go-between" in bringing the parties in contact with each other, functioning as an intermediary between purchaser and seller with respect to the sale of the stock; that he was not a dealer in securities within the meaning of the securities act, hence not required to be a licensed dealer in order to recover commissions, or for the reasonable value of his services, from the purchaser.

The Securities Act, Sec. 33b, provides:

"No person or company shall bring or maintain any action in the courts of this State for the collection of a commission or compensation for services rendered in the sale or purchase of securities, as that term is herein defined, without alleging and proving that such person or company was duly licensed under the provisions hereof and the securities so sold or purchased were duly registered under the provisions hereof at the time the alleged cause of action arose, provided, however, that this Section or provision of this Act shall not apply to the exempt transactions set forth in Section 3 of this Act or to the sale and purchase of securities listed in Section 23 of this Act, when sold by a registered dealer."

It will be seen that Sections 3 and 23 of the Act, appropriately quoted in adjudicated cases hereinafter cited, have to do with transactions made "by, or in behalf of a vendor," otherwise by registered dealers (Sec. 3(c); and the Act exempts transactions of particular designated classes of securities (Sec. 23), unlike those here involved. Section 3 does not exempt dealers or brokers from registering and obtaining license in representing either the "seller or purchaser" of securities; it merely permits sales of securities made by or in behalf of vendors, and exempts such vendors without being registered from the provisions of the Act.

In Cosner v. Hancock, 149 S.W.2d 239, 243, writ refused, correct judgment, the El Paso Court of Civil Appeals held that Sec. 3(c) permits an enforceable contract for the sale of securities by the owners thereof, or by unlicensed dealers, but that the section does not permit an unlicensed dealer or broker to recover compensation for his services. We quote:

"We think involved in that language (referring to a statement by the Supreme Court in Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197, 199) is the construction that Section 3(c) applies to the owner of the security; that he is not a dealer if he sells for the purposes named, either in person or through another, a personally owned security—, provided, of course, he is not in that general business. The sale or contract of sale made under such circumstances, whether by the owner or another, is in all respects legal and enforceable. It is not held, however, we think, that if the one effecting the sale for such a vendor is an unlicensed dealer under the Securities Act that he would be entitled to compensation for his services."

Furthermore, Art. 1083a, Vernon's Ann. Penal Code (Art. 600a, Sec. 30, Vernon's Ann.Civ.St.), prohibits any unlicensed "dealer, agent, salesman, principal, officer, or employee" to "sell, offer for sale or delivery, solicit subscriptions to or orders for, dispose of, invite offers for, or who shall deal in any other manner in any security or securities," under penalty of a felony. The Court of Criminal Appeals in 1938, Atwood v. State, 135 Tex.Cr.R. 543.

121 S.W.2d 353, in the light of the evidence that defendant Atwood was an unregistered dealer in a sale of securities and the transaction in which he was then engaged was not exempt under the provisions of the Securities Act, Sec. 3(c), thus held him guilty of its violation.

In 1940 The Securities Act was before our Supreme Court in Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197, a suit by an unregistered dealer for broker's commission on the sale of securities, similar to that alleged here, and in reversing the Fort Worth Court of Civil Appeals, 134 S.W.2d 448, the Supreme Court held that the involved oil leases were securities and that the transaction in which the broker was engaged was not an exempt transaction under the statute, for which he had no legal claim for commission, and expressly adhered to the holding of the Court of Criminal Appeals in Atwood v. State, supra, and Muse v. State, 137 Tex.Cr.R. 389, 132 S.W.2d 596, saying:

"The spirit of comity that exists between the Court of Criminal Appeals and the Supreme Court has long been recognized, and each court recognizes the supreme authority of the other court in certain fields. This Court has followed, and will follow, the Court of Criminal Appeals in its interpretation of penal laws. (Citation of authorities). In two well-considered cases the Court of Criminal Appeals has construed and upheld the validity of this Act. That court has held that an assignment of an oil and gas lease is a security, and has upheld convictions for violations of the law. * * * Under the undisputed facts of this case, and under the above-mentioned Act, as construed and interpreted by the Court of Criminal Appeals in the Atwood and Muse cases, supra, Clark acted in violation of the criminal law in doing the things he claims he did to earn the commissions here sued for. It follows that he has no legal claim on which a judgment in his favor can stand." [135 Tex. 496, 143 S.W.2d 200]

So, in Culver v. Cockburn, Tex.Civ.App., 127 S.W.2d 328, the undisputed facts revealed that the lease involved was not a security under the provisions of the Securities Act; hence the decision of the Galveston Court to that effect was properly approved by the Supreme Court as a "correct judgment." The approval of the judgment evidently was based on exempt transactions, the like of which is not present in this ap-

peal. Again in 1942, in a transaction which arose long before the Amendment to the Securities Act was passed, Acts Reg. Session, 47th Leg., 1941, ch. 363, p. 593, Vernon's Ann.Civ.Stat. Art. 600a, Secs. 33a, 33b, supra, the Supreme Court in Fowler v. Hults, 138 Tex. 636, 161 S.W.2d 478, 482, on facts similar in effect as here, settled the question that one representing the seller, or owner of securities, must be registered with the Secretary of State to "sell, offer for sale or delivery, solicit subscriptions to or orders for, dispose of, invite offers for, or who shall deal in any other manner in any security or securities"; and, under the Securities Act as it then existed, such unregistered dealer could with impunity represent the purchaser, there being no law prohibiting such representation, and recover compensation for services performed by him. In the opinion the court said: "We express no opinion as to what may be the effect of the amendments made to the Securities Act by the Forty-seventh Legislature," Secs. 33a, 33b, supra.

It is clear, we think, from the statutes and adjudicated cases, that, prior to 1941, transactions, as here, were not exempt from the provisions of the statutes and the sale of such securities by an unregistered dealer came under the inhibitions of both the Criminal and Civil provisions, supra, and that an unregistered dealer, or broker, representing the seller of such securities could not recover commissions for services rendered. The amendments, it will be seen, include any "person or company" representing either the "seller" or purchaser." It will be noticed that the plaintiff does not allege that the sale of the securities was made by him in behalf of the vendor, or owner, as to exempt the transaction under Sec. 3(c) thereof. Even so, he being an unregistered "person" or "dealer" seeking to recover commissions on the transaction not exempt under the amendments, he is forbidden to recover for services rendered in the "sale or purchase" of such securities, without first securing a permit from the State. This inhibition applies to a middleman, intermediary, or "go-between" bringing the parties together to enable them to treat with each other and make their own bargain. We think the position of such a broker is in nowise inconsistent with the provisions of the Securities Act, forbidding unlicensed persons or brokers representing sellers or purchasers of securities to in-

stitute suit for commissions as such brokers. An unregistered broker may not act for both buyer and seller, or neither, and then claim compensation in a transaction involving sale of securities not exempt by law. If such person was not representing either of the parties, as here contended by plaintiff, it is inconceivable how he could maintain a suit against either party and claim a commission or bonus for no service rendered on contract or otherwise. He alleges facts, we think, which designate him as a broker (Sec. 2(h) in the transaction; hence it is immaterial whether he was a broker for the seller or purchaser, or merely an intermediary or "go-between." He was dealing unlawfully in securities, hence it is of no concern who consummated the sale of the securities.

It appearing in plaintiff's petition that plaintiff offered the stock for sale, undertook to dispose of it, and not being a registered or licensed dealer as required by the Act, he could not recover commission or compensation for services. The dual capacity in which plaintiff claims he acted affords no right, where it appears that he was not registered and licensed. The trial court correctly interpreted the petition as revealing no cause of action; thus sustained defendant's motion and dismissed the suit. The judgment is affirmed.

Affirmed.