## SIBLEY v. COFFIELD.

### No. 9537.

Court of Civil Appeals of Texas. Austin.
Feb. 20, 1946.

Rehearing Denied March 6, 1946.

C. C. Renfro, of Dallas, for appellant.

Camp & Camp, of Rockdale, and Weeks, Hankerson & Surles, of Tyler, for appellee.

BLAIR, Justice.

Sibley sued Coffield for $25,000 as compensation for services rendered in securing Oxsheer Smith as a purchaser ready, able and willing to buy certain securities of Coffield at the price he agreed to sell them, but refused to do so. By pre-trial proceeding Coffield obtained an admission that Sibley did not have a dealer's license to sell or deal in the character of securities involved as required by the Texas Securities Act, Art. 600a, as amended, Vernon's Annotated Texas Civil Statutes; and the trial court sustained a motion to dismiss his suit; hence this appeal.

Coffield and Oxsheer Smith each owned one-half of the capital stock of Main & Akard Investment Corporation, which owned the Kirby Building in Dallas; and each of them owned a one-half interest in a second lien note for $762,750 against said building. By a written offer Smith agreed to purchase the corporate stock and the interest of Coffield in said note for $660,000. Within the time allowed for acceptance of the offer Coffield refused to accept, and rejected same. This offer of purchase also provided that "you (Coffield) are to pay one-half of the $25,000 commission for the handling of the trade to S. W. Sibley, which is the agreed commission," and that "S. W. Sibley joins herein in acceptance of the $25,-000 as his full compensation in the event of

final consummation of the transaction." Shortly after these unsuccessful negotiations ended, Coffield agreed to pay Sibley the entire $25,000 commission stipulated for in the unsuccessful transaction, if he would induce Smith to raise his offer for the securities to $700,000, which offer from Smith Sibley secured, but Smith and Sibley were unable to get Coffield to complete the transaction, and he refused to do so. Whereupon, Sibley sued Coffield for $25,000 as the compensation agreed upon for the services rendered in securing Smith as a purchaser ready, able and willing to buy the securities in question at the price Coffield agreed to sell them.

Sibley presents one point as follows:

"Since Coffield was not required to be a licensed dealer under the Texas Securities Act in order to sell his entire interest in the stock of Main and Akard Investment Corporation and his entire interest in the second lien note to his associate, Smith, he could, after negotiations had commenced, employ Sibley to aid him in securing a better offer from Smith than he had been able to obtain, and would be liable to Sibley for the compensation agreed to, notwithstanding Sibley was not a licensed dealer under the Securities Act.'"

■ Under the foregoing facts as plead and admitted we think that the Securities Act prohibits the maintaining of this suit by Sibley, because he was a "dealer" in securities as defined by the Act, and was required by the Act to obtain a dealer's license before he could legally sell or offer them for sale. The pertinent portions of the Act read as follows:

Sec. 2(c) of the Act provides:

"The term 'dealer' shall include every person * * * who engages in this State, either for all or part of his * * * time * * * in selling, offering for sale or delivery, or soliciting subscriptions to, or orders for, or undertaking to dispose of, or invite offers for, or dealing in any other manner in any security or securities within this State."

Sec. 3 of the Act provides:

"Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions:

   *     *     *     *     *

"(c) Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities, provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended, either directly or indirectly, for the benefit of any company or corporation within the purview of this Act.

   *     *     *     *     *

"(m) Wherein the securities disposed of consist exclusively of notes or bonds secured by mortgage or vendor's lien upon real estate or tangible personal property, and the entire mortgage is sold or transferred with all of the notes or bonds secured thereby in a single transaction."

Sec. 33b amended the Act to read as follows:

"No person or company shall bring or maintain any action in the courts of this State for the collection of a commission or compensation for services rendered in the sale or purchase of securities, as that term is herein defined, without alleging and proving that such person or company was duly licensed under the provisions hereof and the securities so sold or purchased were duly registered under the provisions hereof at the time the alleged cause of action arose, provided, however, that this Section or provision of this Act shall not apply to the exempt transactions set forth in Section 3 of this Act or to the sale and purchase of securities listed in Section 23 of this Act, when sold by a registered dealer."

■ Sibley was a dealer or broker in the securities offered by him for sale to Smith. Sibley does not otherwise contend, but alleged as the basis of his cause of action that the transaction negotiated between Coffield and Smith was an exempt transaction as to Coffield under Secs. 3(c) and (m) and Sec. 33b; and that in consequence it was not necessary for him (Sibley) to obtain a dealer's license to negotiate such an exempt transaction; and that it was not necessary for him to have such a license

in order to collect his compensation from Coffield, or to sue therefor in the courts.

Secs. 3(c) and 33b, supra, do not relieve Sibley of the necessity of obtaining a dealer's license before he could collect or maintain a suit for his dealer's compensation or commission. Those sections apply to the owner of the security. Under such sections the owner is not a dealer if he sells the security for the purpose stated, although he may in person or through another sell a security owned by himself, provided, however, the owner of the security is not otherwise engaged in the business of selling securities. These statutes merely relieve the owner of certain securities from having to register them for sale, and otherwise exempt the owner of the named securities from the provisions of the Act relating to obtaining a dealer's license. Such statutes do not exempt or relieve the dealer or broker in such a transaction from registering and obtaining a license before he would be entitled to compensation for his services, or before he could "bring or maintain any action in the courts of this State for the collection of a commission or compensation for services rendered in the sale or purchase of securities."

Several court decisions have construed either Sec. 3(c) or Sec. 33b, or both of them together, and hold in substance that even if, in fact, an owner or seller of stock or security were exempt from obtaining a dealer's license and from registering such stock or security, and even if in fact the sale or offer to sell by such owner or seller is made in the ordinary course of a bona fide sale, such facts do not exempt or relieve a person employed to aid the owner or seller in making or offering the stock or security for sale from registering and obtaining a license as a "dealer" or "broker," as required by Sec. 2(c) of the Act, before he can collect a commission or compensation for such services; or sue therefor in the courts. Cosner v. Hancock, Tex.Civ. App., 149 S.W.2d 239, error dismissed; Shriver v. Stoddard, Tex.Civ.App., 188 S.W.2d 892, error refused; Flournoy v. Gallagher, Tex.Civ.App., 189 S.W.2d 108. See also Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197; Atwood v. State, 135 Tex. Cr.R. 543, 121 S.W.2d 353.

The proposed sale was of one-half of the stock of the corporation and one-half interest in the second lien note, for which Coffield was to take $700,000. No recovery was sought for the sale of the note

separately from the corporate stock. In consequence, Sec. 3(m), which relates to disposition of securities which consist "exclusively of notes or bonds secured by mortgages or vendor's lien upon real estate or tangible personal property," all sold in a single transaction, has no application.

The judgment of the trial court is affirmed.

Affirmed.