The WILLIAM BUCHANAN FOUNDA-TION (The University of Texas), et al., Petitioners,

v.

John Ben SHEPPERD, Respondent.

No. A-5568.

Supreme Court of Texas.

April 11, 1956.

Black & Stayton, Scott Gaines and Rupert P. Harkrider, Austin, for petitioners.

John Ben Shepperd, Atty. Gen., and W. V. Geppert, Marietta McGregor Payne and William H. Holloway, Asst. Attys. Gen., for respondent.

PER CURIAM.

On agreed motion of the parties the judgments of the District Court and Court of Civil Appeals, 283 S.W.2d 325, in the above cause are reversed, and the cause is remanded to the trial court with instructions to enter such orders and decrees and

to take such further action as may be required to effectuate the agreement of the parties.

Costs of appeal are assessed against petitioner The William Buchanan Foundation.

John W. MECOM, Petitioner,

v.

Tolar N. HAMBLEN et al., Respondents.

No. A-5380.

Supreme Court of Texas.

Feb. 15, 1956.

As Modified on Denial of Rehearing May 9, 1956.

Butler, Binion, Rice & Cook, Cecil N. Cook and James D. Smullen, Houston, for petitioner.

Andrews, Kurth, Campbell & Bradley, Homer Mabry, S. Eastland, Jr., and Barrow, Junell & Robertson, Houston, Shank, Dedman & Payne, Ralph B. Shank, Dallas, for respondents.

CULVER, Justice.

Respondent, Hamblen, sued petitioner, Mecom, and Placid Oil Company for $11,690.35, claimed to be the balance of the purchase price for an oil and gas lease assigned by Hamblen to Mecom, and by Mecom to Placid. A. D. Hawkins and J. H. Byerly each as cross-plaintiffs plead for one-third of the amount claimed by Hamblen.

The trial court, without the intervention of a jury, at the conclusion of petitioner's case granted defendant's motion on all points and entered a take-nothing judgment against the three parties plaintiff.

The Court of Civil Appeals has reversed and rendered for Hamblen and Hawkins, awarding to each one-third of the total sum sued for, Byerly not having appealed, and affirmed the take-nothing judgment awarded in favor of Placid. Hamblen v. Placid Oil Co., 279 S.W.2d 127.

The Court of Civil Appeals construed the lease from Barrow to Hamblen and the assignment of that lease from Hamblen to Mecom as obligating Mecom to pay to Hamblen and his associates $1 per acre for the acreage that the court held to have been "selected and retained" and which included all of the land described in the original lease.

The Court of Civil Appeals further held that respondents, Hamblen and Hawkins, were not precluded from recovering the compensation sued for by reason of their failure to plead and prove compliance with the Texas Securities Act. Art. 600a, Vernon's Ann.Civ.Stat.

We have concluded that the Court of Civil Appeals was in error on both points and judgment of the trial court will be affirmed.

The lease from Barrow to Hamblen provided in part as follows:

"4(a). If operations for drilling are not commenced on said land on or before 6 months from this date, this lease shall then terminate as to both parties *unless* on or before the expiration of said 6 months Lessee shall pay * * * Lessor * * * $4.00 per acre for the number of acres then covered by this lease and not surrendered as hereinafter provided, which shall cover the privilege of deferring commencement of drilling operations for a period of 12 months. Thereafter, upon the payment * * * anually the sum of $1.00 per acre for the number of acres then covered by this lease, and not surrendered as hereinafter provided, the commencement of drilling operations may be further deferred for successive periods of 12 months each

during the primary term. \* \* \* Lessee may at any time execute and deliver to Lessor \* \* \* a release covering any portion of the premises and thereby surrender this lease as to such portion and be relieved of all obligations as to the acreage surrendered, and thereafter the rentals payable hereunder shall be reduced in the proportion that the acreage covered hereby is reduced by said release.

"4(b). It is expressly agreed that said privilege of selecting acreage or commencing operations for the drilling of a well on said lease on or before the expiration of said 6 months, as provided above, may be further extended for additional months, not exceeding 12, by paying \* \* \* the sum of 5¢ per acre for said 11,690.35 acres, and the expiration of the last extension, if any, shall mark the commencement of the 5 year period and shall be the anniversary date of said lease for rental payment purposes; provided, however, that Lessee shall have the right at any time on or before said selection date, or extension thereof, to select certain acreage which he desires to retain and to pay said selection bonus only upon such acreage, provided further that, notwithstanding this selection provision, no such selection shall be effective unless Lessee selects at least 3000 acres. In the event Lessee begins operations for drilling a well prior to said selection date, or extension thereof, \* \* \* Lessee shall if he elects to retain less than the whole of said acreage, give notice in writing to Lessor on or before said selection date, or extension thereof, of the acreage which Lessee elects to so select and retain under this lease. In either such event Lessee shall within a reasonable time after such selection deliver a good and sufficient recordable release as to that portion of said property which he elects to surrender.

"5. \* \* \* If Lessee should drill a dry hole, this lease shall not terminate \* \* \* if it is in the pri-

mary term and Lessee commences or resumes payment of rentals \* \* \*."

The pertinent paragraph in the assignment from Hamblen to Mecom reads as follows:

"Assignee agrees, *as a part of the consideration herefor, that he will pay Assignor $1.00 per acre for each acre selected and retained under the provisions of Paragraph 4(a)* of said oil, gas and mineral lease, and will pay Assignor 5¢ for each 5¢ paid Lessor under the provisions of Paragraph 4(b) of such oil, gas and mineral lease."

Mecom thereafter assigned this lease to Placid Oil Company.

We are of the opinion that a proper construction of the two instruments leads to the conclusion that Mecom is not obligated to pay to the respondents, Hamblen and Hawkins, the $1 per acre whether it be claimed as a part of the purchase price or as a commission for the sale of the lease.

Mecom agreed to pay $1 per acre only for such acreage that might be "selected and retained" under the provisions of Paragraph 4(a) of the original lease. Paragraph 4(a) provides that the lessee must drill on the land within six months from the date of the lease or pay a "selection bonus" of $4 per acre as rental for the first year. Obviously this provision was for the purpose of furnishing an incentive to the lessee to drill. If the drilling was commenced within the six-months period there would not be any need for "selection and retention" of acreage and the selective bonus of $4 would not become due and owing. The drilling of the well would defer rentals on all of the 11,000-acre tract and if production was obtained of course the lease would be in full force and effect for so long as oil was produced in paying quantities.

As allowed in 4(b) drilling operations or the selection and retention of acreage could be deferred by payment of five cents per acre per month to the lessor for not to exceed twelve additional months. Within the eighteen months as extended by the pay-

ment of the five cents Placid commenced drilling operations on May 13, 1949. In compliance with the terms of the assignment five cents per acre per month was also paid by Placid to respondents. The well was completed as a dry hole on June 9, 1949. According to the terms of the lease thus the primary term began and Placid has continued paying rentals at the rate of $1 per acre per year up until the time of the filing of this suit.

The selection of acreage for retention or the commencement of drilling operations were stated in the alternative. The privilege of selecting and retaining acreage expired with the end of the extension period and with the beginning of the primary term. Placid did not elect to retain less than the whole and did not surrender any acreage. If there had been a "selection and retention" then the $4 selection bonus would have been due the lessor. It seems to be conceded or at least it may be said that no one has contended that the $4 selection bonus ever became due. Placid elected to drill rather than to select and retain. If Placid had selected and retained all of the acreage under the lease the selection bonus would have amounted to in excess of $46,000. The company chose to apply this rather sizeable amount to the drilling of a well which it did drill at a cost of over $100,000.

■ We therefore say that there was never any "selection or retention" of acreage as provided in and contemplated by Paragraph 4a, and Hamblen's right to recover $1 per acre, resting solely upon the contention that there was a "selection and retention," his claim must be denied.

This conclusion seems to be borne out further by the fact that Hamblen retained an overriding royalty of ⅟₄₈th of all the oil and gas produced and thus was interested in the commencement of drilling operations by the lessee.

■ Even if Hamblen were correct in his construction of the contract that all of the acreage was retained and selected and the $1 per acre "consideration" became due

and payable, yet we think neither he nor Hawkins can recover by reason of the provisions of the Texas Securites Act.

We think the undisputed facts show that the lease was taken in Hamblen's name solely for the purpose of assigning it to John W. Mecom. All of the material transactions occurred contemporaneously on August 7, 1948. The suit actually is one to recover commission on the sale of a lease rather than a part of the purchase price for the assignment.

Hamblen had previously handled the lease on the Barrow land, as he says, "seven, six or five times". In each instance he would take the lease in his name and execute an assignment. On this occasion Byerly came to Hamblen and told him that he had someone that would like to make a deal on this property. Byerly had inquired from one of the former lessees and was informed that Hamblen handled that land. Hamblen then made known to Byerly the terms of the lease and three or four days later Byerly told Hamblen that the terms were acceptable. Only then did Hamblen take any steps to obtain the lease from Barrow. He thereupon got in communication with Hawkins, a relative of the lessors, and told him to let his uncle know that he, Hamblen, wanted the 11,000-acre ranch. The lease was executed to Hamblen as lessee calling for a bonus of 25¢ per acre with draft attached drawn on Hamblen, which was mailed to Hamblen's bank. Hamblen drew an assignment of this lease to Mecom at the price of 50¢ per acre. Mecom then paid Hamblen the 50¢ and Hamblen took up the draft, delivered the lease and assignment to Mecom and pocketed the difference. The profit of $2,922.59 was divided one-third each to Byerly, Hawkins and Hamblen. The foregoing testimony indicates that Hamblen was not a bona fide owner of the lease, but only took it in his name for the purpose of transferring the same to Mecom. Hamblen had no intention of having the lease executed until he found a purchaser. He had no intention of paying any part of the consideration out of his own funds and would not have taken up the draft unless Mecom had paid over the amount of money de-

manded by the lessor and assignor. This was patently just a method of selling a lease and earning a commission. Hamblen admits that the lessor had told him that he could have for himself all over and above a certain price. We think the law is not to be circumvented in such manner. If so then, all that one must do to avoid the penalties of the Act is to take the security in his own name when he has found a purchaser and then convey the same, adding to the price the amount of his commission.

Respondents say that the term "consideration" as set out in the assignment from Hamblen to Mecom is contractual in nature and in the absence of fraud, accident or mistake it cannot be said that the consideration was something different from that expressed. This argument is beside the point. The question here is not whether a recited contractual consideration may be varied or contradicted by parol, not what the consideration was, but whether the amount recited to be paid was a part of the purchase price or was a brokerage commission. The parties, by using the term "consideration" cannot preclude an inquiry as to whether it was actually a commission. The pertinent phrase in the assignment reads "as a part of the consideration hereof, that he will pay to assignor the sum of One Dollar ($1.00) per acre for each acre selected and retained under the provisions of Paragraph 4(a) of said oil, gas and mineral lease * * *." The words "consideration" and "compensation" are used interchangeably and ordinarily are synonymous. The Merriam-Webster New International Dictionary, Second Edition.

Among other cases respondents cite Harriss v. Ritter, Tex., 279 S.W.2d 845, holding that a warranty deed reserving one-half of one-eighth of the royalty and one-half of any bonuses or rentals that might be paid under the lease for a period of ten years was not ambiguous, and in the absence of fraud, accident or mistake, parol evidence was not admissible to vary the terms of the deed. We do not think this case is authority for respondent's proposition that the use of the word "considera-

tion" must establish conclusively that Hamblen was a bona fide owner of the leasehold or that the so-called consideration was not compensation for his service and actually a commission.

The Securities Act, § 33b, precludes the right of a person to sue for the collection of a commission or compensation for services rendered in the sale or purchase of securities, without alleging and proving that he was duly licensed under the provisions of the Act.

Section 2(a) defines the term "securities" as including "any instrument representing any interest in or under an oil, gas or mining lease".

Section 3(c) exempts from the provisions of the Act a sale under the following circumstances:

"Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities; provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended, either directly or indirectly, for the benefit of any company or corporation within the purview of this Act."

We are of the opinion that this exemption does not relieve the respondents, Hamblen and Hawkins, from failure to comply with the Act for the reason that the sale of the lease was not made by them in the ordinary course of a bona fide personal investment of their own personal holdings.

These facts are established conclusively, we think, by the testimony and admissions of Hamblen himself who was the only witness, but if it be said that a fact issue was raised it was determined adversely to respondents by the trial court.

Hamblen testified that he was in the oil business and that a good part of his business is the buying and selling leases for

others and to others, and that this particular lease was handled in that course of his business. Hawkins also was engaged in the lease brokerage business.

The facts in Atwood v. State, 135 Tex. Cr.R. 543, 121 S.W.2d 353, 357, are rather similar to those before us. The appellant in that case would take leases in his own name upon the condition that if he made a sale of the lease he would pay the landowner an agreed amount, otherwise the lease would be surrendered to the landowner. The court said: "The conveyance to the appellant by the landowner appears to have been made for the convenience of the parties and without purpose on the part of either that the appellant should become the owner of the lease." Clearly this was what Hamblen was doing. He had, according to his testimony, handled this very lease several times before in this manner and had a standing agreement with the landowners that this procedure would be followed when he secured a purchaser. He had no intention of buying and paying for the lease himself. The Atwood case goes further in holding that even if the appellant were the owner of the oil and gas lease "it is observed that his course of dealing with oil and gas leases generally constituted him a dealer within the purview of the statute. It follows that, if effect is to be given to the announcement of the judicial precedents, we must hold that the Legislature transcended no constitutional limitation in requiring owners of securities to register when the things they do place them in the category of dealers."

Respondents maintain that the Act does not apply to Hamblen because he was the agent of Mecom in purchasing the lease and the Act does not purport to protect purchasers.

We do not think Hamblen's evidence supports that conclusion. He says "Byerly came to his office and then I said, 'Well, Hamilton, here is the kind of a lease form it is going to be on. . Here's the kind of an assignment I am going to give you. Here it is,' * * *." It was Hamblen who fixed the terms of the lease according to the requirements of the lessor, and it was Hamblen who dictated the terms of the assignment, showing that he was not acting as Mecom's agent. He was a broker with this lease for sale. He had sold it in the same manner several times before. The principle involved would be no different if Mecom inquired from Hamblen as to the terms and purchase price of any securities which had been listed with Hamblen for sale and had brought them from Hamblen on those terms.

Respondent, in support of his contention cites Fowler v. Hults, 138 Tex. 636, 161 S.W.2d 478. Hults employed Fowler to obtain oil and gas leases for a consideration of $1 per acre to be paid to the landowners and agreed to pay Hults a commission of 10¢ per acre for all that he secured. Fowler was held not to be a dealer and the Securities Act thus did not apply. We do not have a situation here analogous to that in the Fowler case. Hamblen, so to speak, controlled this lease and was in the attitude of a broker having this lease for sale.

The judgment of the Court of Civil Appeals is reversed and rendered in favor of petitioners and the judgment of the trial court is affirmed.